# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

PETER WILLIAMS,

    *Petitioner*,

    v.

ENVIRONMENTAL PROTECTION
AGENCY, MICHAEL S. REGAN,
ADMINISTRATOR, ENVIRON-
MENTAL PROTECTION AGENCY,
in his official capacity,

    *Respondents*.

No. _____

24-1386

## PETITION FOR REVIEW

Pursuant to § 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), § 10(d)-(e) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 705-706, and the All Writs Act, 28 U.S.C. § 1651(a), petitioner Peter Williams hereby petitions this Court for review of the following final agency action by respondents Environmental Protection Agency, its Administrator, Michael S. Regan, and his delegees ("EPA") in EPA's hydrofluorocarbon ("HFC") allocation program:

1.    Environmental Protection Agency, Notice, *Phasedown of Hydrofluoro-carbons: Notice of 2025 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Actions Establishing Administrative Consequences*, 89 Fed. Reg. 84,583 (Oct. 23, 2024) (copy attached hereto as Exhibit A); and

2. Letter from Joseph Goffman, Assistant Administrator for Air & Radiation, to J. Gordon Arbuckle & Lawrence J. Joseph (Nov. 8, 2024) (enclosing Letter from Cynthia A. Newburg, Director, Stratospheric Protection Division, Environmental Protection Agency, to Peter Williams (Mar. 31, 2022)) (copy attached hereto as Exhibit B[1]).

Venue and jurisdiction are proper in this Court because Section 307(b)(1) directs review in this Court of final agency action that is "nationally applicable" or based on the agency's published determination of "nationwide scope or effect." 42 U.S.C. § 7607(b)(1). EPA made those findings in its notice, 89 Fed. Reg. at 84,591-92 (Ex. A). Further, with respect to the Goffman letter, any change to one applicant's HFC allocations affects the division of the entire HFC "pie" so that the Goffman letter too is nationally applicable. *See RMS of Ga., LLC v. U.S. EPA*, 64 F.4th 1368, 1374 (11th Cir. 2023). Although EPA has not yet published the Goffman letter in the Federal Register, this petition is timely filed within the non-jurisdictional 60-day window provided by Section 307(b)(1). *See* 42 U.S.C. § 7607(b)(1); *Harrow v. DOD*, 601 U.S. 480, 484-88 (2024) (60-day windows for petitioning for review under statutes modeled on the Hobbs Act are non-jurisdictional claims-processing rules, not limits on courts' subject-matter jurisdiction).

---

[1] Although this "Goffman letter" is dated November 8, 2024, EPA emailed the Goffman letter to petitioner's counsel on November 15, 2024.

In addition to the foregoing two final EPA actions taken within the past sixty days, the Goffman letter also constitutes an after-arising ground within the meaning of Section 307(b)(1), 42 U.S.C. § 7607(b)(1), with respect to the following four EPA actions initially taken more than sixty days ago:[2]

1.   Letter from Cynthia A. Newburg, Director, Stratospheric Protection Division, Environmental Protection Agency, to Peter Williams (Mar. 31, 2022) (copy attached hereto as Exhibit C);

2.   Environmental Protection Agency, Notice, *Phasedown of Hydrofluoro-carbons: Notice of 2022 Set-Aside Pool Allowance Allocations for Production and Consumption of Regulated Substances under the American Innovation and Manufacturing Act of 2020*, 87 Fed. Reg. 19,683 (Apr. 5, 2022) (copy attached hereto as Exhibit D);

3.   Environmental Protection Agency, Notice, *Phasedown of Hydrofluoro-carbons: Notice of 2023 Allowance Allocations for Production and Consumption of Regulated Substances under the American Innovation and*

---

[2]   This Court previously held that it lacked jurisdiction to consider petitioner's challenge to HFC allocations because EPA denied his application and he challenged that denial more than 60 days after EPA acted. Order, at 2 (July 7, 2023), *RMS of Georgia, LLC v. Envtl. Prot. Agency*, Nos. 22-1025, 22-1313, 22-1314 (D.C. Cir.). *Harrow* undermined the jurisdictional nature of that holding regarding review within the 60-day window, and—in any event—the prior holding does not address review based on an after-arising ground. *See* 42 U.S.C. § 7607(b)(1).

*Manufacturing Act of 2020*, 87 Fed. Reg. 61,314 (Oct. 11, 2022) (copy

attached hereto as Exhibit E); and

4.    Environmental Protection Agency, Notice, *Phasedown of Hydrofluoro-*

*carbons: Notice of 2024 Allowance Allocations for Production and*

*Consumption of Regulated Substances Under the American Innovation and*

*Manufacturing Act of 2020, and Notice of Final Administrative*

*Consequences*, 88 Fed. Reg. 72,060 (Oct. 19, 2023) (copy attached hereto as

Exhibit F).

The "Newberg letter" was part of determining division of the total "pie" of HFC

allocations to all participants in the EPA program, which constitutes nationwide

scope and effect. *See RMS of Ga.*, 64 F.4th at 1374. The three Federal Register

notices all applied nationally or had nationwide scope for purposes of venue in this

Court. *See* 87 Fed. Reg. at 19,686-87 (Ex. D); 87 Fed. Reg. at 61,317-18 (Ex. E); 88

Fed. Reg. at 72,066-67 (Ex. F).[3]

---

[3]    Although HFC allocations for 2022, 2023, and soon 2024 may have expired
for most purposes, past HFC allocations unlawfully denied petitioner are not wholly
moot. For example, a reviewing court could award a "backpay" remedy (*i.e.*, HFC
allocations denominated in current or future years for HFC allocations improperly
denied in past years). *See Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S.
298, 307-08 (2012) (mootness requires the *impossibility* of relief).

Dated: December 23, 2024

Respectfully submitted,

 /s/ Lawrence J. Joseph
Lawrence J. Joseph

Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner*

# **EXHIBIT A**

type of test information submitted, and chemical substance identity.

TABLE III—TEST INFORMATION RECEIVED FROM 9/1/2024 TO 9/30/2024

| Case No. | Received date | Type of test information | Chemical substance |
|---|---|---|---|
| P–14–0712 ...... | 09/26/2024 | Polychlorinated Dibenzodioxins and Polychlorinated dibenzofurans Testing. | (S) Waste plastics, pyrolyzed, C5–55 fraction. |
| P–16–0543 ...... | 09/24/2024 | Exposure Monitoring Report ............................................................ | (G) Halogenophosphoric acid metal salt. |
| P–21–0180 ...... | 09/18/2024 | Determination of Water Solubility Report ...................................... | (G) Sulfonium, (halocarbomonocycle)diphenyl-, salt with 1-heterosubstituted-2-methylalkyl trihalobenzoate (1:1). |
| P–22–0086 ...... | 09/26/2024 | Supplementary Test Data Report .................................................... | (G) Phenoxathiinium, 10-phenyl-, 5-alkyl-2-alkyl-4-(2,4,6-substituted tri- carbopolycycle, hetero-acid)benzenesulfonate (1:1). |
| P–22–0179 ...... | 09/18/2024 | Water Solubility: Column Elution Method; Shake Flask Method (OECD Test Guideline 105). | (G) Sulfonium, (alkylsubstitutedphenyl)diphenyl-, salt with 1-(heterosubstitutedalkyl)-2,2,2-triheterosubstitutedalkyl trisubstitutedbenzoate (1:1). |
| P–22–0180 ...... | 09/18/2024 | Water Solubility: Column Elution Method; Shake Flask Method (OECD Test Guideline 105). | (G) Dibenzothiophenium, 5-phenyl-, 4-[1-(heterosubstitutedalkyl)-2,2,2-triheterosubstitutedalkoxy]-4-oxoalkyl trisubstitutedbenzoate (1:1). |
| P–24–0097 ...... | 09/18/2024 | Water Solubility: Column Elution Method; Shake Flask Method (OECD Test Guideline 105). | (G) Sulfonium, tris(4-fluorophenyl)-, (substitutedphenoxy)alkyl substitutedbenzoate (1:1). |

If you are interested in information that is not included in these tables, you may contact EPA's technical information contact or general information contact as described under **FOR FURTHER INFORMATION CONTACT** to access additional non-CBI information that may be available.

*Authority:* 15 U.S.C. 2601 *et seq.*

Dated: October 17, 2024.

**Pamela Myrick,**

*Director, Project Management and Operations Division, Office of Pollution Prevention and Toxics.*

[FR Doc. 2024–24503 Filed 10–22–24; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OAR–2021–0669; FRL–9116–06–OAR]**

**Phasedown of Hydrofluorocarbons: Notice of 2025 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Actions Establishing Administrative Consequences**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA) has issued calendar year 2025 allowances for the production and consumption of hydrofluorocarbons in accordance with the Agency's regulations. This issuance of allowances is undertaken pursuant to the American Innovation and Manufacturing Act, which directs the Environmental Protection Agency by October 1 of each calendar year to determine the quantity of production and consumption allowances for the following calendar year. In this notice, the Agency is also providing notice of separate Agency actions previously taken to establish administrative consequences for specific entities. These previously finalized actions withheld, retired, or revoked the identified entities' newly-issued calendar year 2025 allowances in accordance with the administrative consequence regulatory provisions.

**FOR FURTHER INFORMATION CONTACT:** Andy Chang, U.S. Environmental Protection Agency, Stratospheric Protection Division, telephone number: 202–564–6658; email address: *chang.andy@epa.gov.* You may also visit EPA's website at *https://www.epa.gov/climate-hfcs-reduction* for further information.

**SUPPLEMENTARY INFORMATION:** Subsection (e)(2)(D)(i) of the American Innovation and Manufacturing Act of 2020 (AIM Act) directs the Environmental Protection Agency (EPA) to determine, by October 1 of each calendar year, the quantity of allowances for the production and consumption of regulated substances that may be used for the following calendar year. EPA has codified the production and consumption baselines and phasedown schedules for regulated substances in 40 CFR 84.7. Under the phasedown schedule, for 2025, total production allowances may not exceed 229,521,263 metric tons of exchange value equivalent (MTEVe) and total consumption allowances may not exceed 181,522,990 MTEVe.

EPA regulations at 40 CFR part 84, subpart A, outline the process by which the Agency determines the number of allowances each entity is allocated. EPA allocated allowances consistent with the regulatory requirements, and has posted entity-specific allowance allocations on its website at *https://www.epa.gov/climate-hfcs-reduction.* An allowance allocated under the AIM Act does not constitute a property right and is a limited authorization for the production or consumption of a regulated substance.

Note that while allowances may be transferred or conferred once they are allocated, they can only be expended to cover imports and production in the calendar year for which they are allocated. In other words, calendar year 2025 allowances may only be expended for production and import of bulk HFCs between January 1, 2025, and December 31, 2025.

### Application-Specific Allowances

EPA established the methodology for issuing application-specific allowances in the 2021 final rule titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program Under the American Innovation and Manufacturing Act* (86 FR 55116, Oct. 5, 2021) and codified the methodology for allocations in 40 CFR 84.13. Because application-specific allowances can be expended to either produce or import HFCs, and application-specific allowances must be provided from within the overall annual production and consumption caps, EPA subtracts the amount of application-specific allowances allocated from both the production and consumption general allowance pools. EPA issues application-specific allowances to end users in five applications established by the AIM Act: propellants in metered dose inhalers (MDIs), defense sprays, structural composite preformed polyurethane foam for marine use and trailer use, etching of semiconductor material or wafers and the cleaning of

chemical vapor deposition chambers within the semiconductor manufacturing sector, and onboard aerospace fire suppression.

Additionally, EPA issues application-specific allowances to the U.S. Department of Defense for mission-critical military end uses.

Applying the methodology codified in 40 CFR 84.13, EPA allocated the number of application-specific allowances shown in Table 1.

TABLE 1—NUMBER OF CALENDAR YEAR 2025 APPLICATION-SPECIFIC ALLOWANCES ALLOCATED PER ENTITY

| Entity | Application | Application-specific allowances (MTEVe) allocated |
| --- | --- | --- |
| Analog Devices | Semiconductors | 15,998.9 |
| Applied Materials | Semiconductors | 2,290.4 |
| Armstrong Pharmaceuticals | Propellants in MDIs | 237,054.0 |
| ASML US | Semiconductors | 1,033.8 |
| AstraZeneca Pharmaceuticals | Propellants in MDIs | 2,677.0 |
| Aurobindo Pharma USA | Propellants in MDIs | 23,196.2 |
| Compsys | Structural Composite Preformed Polyurethane Foam | 16,066.0 |
| Defense Technology | Defense Sprays | 5,297.2 |
| Diodes Incorporated | Semiconductors | 1,410.2 |
| General Electric | Semiconductors | 147.7 |
| GlaxoSmithKline | Propellants in MDIs | 507,289.7 |
| GlobalFoundries | Semiconductors | 117,767.1 |
| Hitachi High-Tech America | Semiconductors | 113.0 |
| IBM Corporation | Semiconductors | 613.0 |
| Intel Corporation | Semiconductors | 528,200.3 |
| Invagen Pharmaceuticals | Propellants in MDIs | 59,385.2 |
| Jireh Semiconductor | Semiconductors | 2,315.5 |
| Keysight Technologies | Semiconductors | 538.8 |
| Kindeva Drug Delivery | Propellants in MDIs | 492,000.0 |
| LA Semiconductor | Semiconductors | 2,067.3 |
| Lam Research Corp. | Semiconductors | 45,436.9 |
| Lupin | Propellants in MDIs | 19,031.0 |
| Magic Leap | Semiconductors | 516.9 |
| Medtronic Tempe Campus | Semiconductors | 455.1 |
| Microchip Technology | Semiconductors | 7,387.2 |
| Micron Technology | Semiconductors | 21,068.2 |
| Newport Fab DBA TowerJazz | Semiconductors | 4,250.5 |
| Northrop Grumman Corporation | Semiconductors | 2,793.6 |
| NXP Semiconductor | Semiconductors | 34,081.1 |
| Polar Semiconductor | Semiconductors | 9,151.7 |
| Proteng Distribution | Onboard Aerospace Fire Suppression | 6,723.4 |
| Qorvo Texas | Semiconductors | 470.0 |
| Renesas Electronics America | Semiconductors | 940.1 |
| Samsung Austin Semiconductor | Semiconductors | 235,624.8 |
| Security Equipment Corporation | Defense Sprays | 93,229.5 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 35,794.8 |
| SkyWater Technology | Semiconductors | 10,463.5 |
| Skyworks Solutions | Semiconductors | 2,067.6 |
| Taiwan Semiconductor Manufacturing Company Arizona Corporation (TSMC Arizona Corporation). | Semiconductors | 120,485.4 |
| Texas Instruments | Semiconductors | 214,219.4 |
| The Research Foundation for The State University of New York at NY CREATES. | Semiconductors | 11,678.4 |
| Tokyo Electron U.S. Holdings | Semiconductors | 5,123.9 |
| Tower Semiconductor San Antonio | Semiconductors | 3,290.4 |
| TSMC Washington (formerly WaferTech) | Semiconductors | 10,384.5 |
| UC San Diego | Semiconductors | 940.1 |
| UDAP Industries | Defense Sprays | 110,727.8 |
| Wabash National Corporation | Structural Composite Preformed Polyurethane Foam | 49,299.5 |
| Wolfspeed | Semiconductors | 15,779.7 |
| X–FAB Texas | Semiconductors | 1,262.5 |
| Department of Defense | Mission-critical Military End Uses | 6,238,033.5 |
| Total Issued | All | 9,326,172.3 |

## General Pool Allowances

EPA's 2023 final rule titled *Phasedown of Hydrofluorocarbons: Allowance Allocation Methodology for 2024 and Later Years* (88 FR 46836, July 20, 2023) updated the methodology for

how the Agency would issue production and consumption allowances for 2024 through 2028. These updates are codified in 40 CFR 84.9 (production) and 40 CFR 84.11 (consumption), and EPA is issuing allowances to entities

who meet the criteria in the regulations, including those who were previously issued consumption allowances as new market entrants pursuant to 40 CFR 84.15.

Applying the methodology codified in 40 CFR 84.9, EPA allocated the number of production allowances shown in Table 2.

### TABLE 2—NUMBER OF CALENDAR YEAR 2025 PRODUCTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Production allowances allocated (MTEVe) |
|---|---|
| Application-specific allowances | [a]9,326,172.3 |
| Arkema | 26,569,642.0 |
| Chemours | 49,257,821.8 |
| Honeywell International | 111,508,876.7 |
| Iofina Chemical | 1,142.5 |
| Mexichem Fluor DBA Koura | 32,857,607.7 |
| Total Issued | 229,521,263.0 |

[a] See Table 1; this value corresponds to the total number of application-specific allowances allocated.

Applying the methodology codified in 40 CFR 84.11, EPA allocated the number of consumption allowances shown in Table 3.

### TABLE 3—NUMBER OF CALENDAR YEAR 2025 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Consumption allowances allocated (MTEVe) |
|---|---|
| Application-specific allowances | [a]9,326,172.3 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 126,446.8 |
| Ability Refrigerants | 126,446.8 |
| ACT Commodities | 49.2 |
| Advance Auto Parts | 452,130.1 |
| Advanced Specialty Gases | 180,476.2 |
| AFK & Co. | 122,233.6 |
| AFS Cooling | 126,446.8 |
| A-Gas | 2,156,453.7 |
| Air Liquide USA | 315,346.4 |
| American Air Components | 126,446.8 |
| Arkema | 19,656,867.3 |
| Artsen | 649,992.4 |
| Automart Distributors DBA Refrigerant Plus | 126,446.8 |
| AutoZone Parts | 1,278,314.6 |
| AW Product Sales & Marketing | 76,455.4 |
| Bluon | 21,165.2 |
| CC Packaging | 122,653.4 |
| Chemours | 21,679,708.6 |
| Chemp Technology | 126,446.8 |
| ChemPenn | 14,060.4 |
| ComStar International | 227,930.8 |
| Creative Solution | 126,446.8 |
| Cross World Group | 126,446.8 |
| Daikin America | 1,974,152.3 |
| EDX Industry | 363,578.9 |
| Electronic Fluorocarbons | 65,968.2 |
| Fireside Holdings DBA American Refrigerants | 126,433.2 |
| First Continental International | 486,962.7 |
| FluoroFusion Specialty Chemicals | 1,614,609.9 |
| Freskoa USA | 126,446.8 |
| GlaxoSmithKline | 340,497.3 |
| Golden Refrigerant | 126,446.8 |
| Harp USA | 484,265.5 |
| Honeywell International | 52,089,837.5 |
| Hudson Technologies | 2,129,502.6 |
| Hungry Bear | 126,446.8 |
| ICool USA | 2,155,102.6 |
| IGas Holdings | 16,514,965.1 |
| Iofina Chemical | 800.3 |
| Kidde-Fenwal | 126,446.8 |
| Lenz Sales & Distribution | 702,334.8 |
| Lina Trade | 126,446.8 |
| Linde | 336,839.5 |
| Matheson Tri-Gas | 21,582.0 |
| MEK Chemical Corporation | 52,517.1 |
| Meraki Group | 126,446.8 |

TABLE 3—NUMBER OF CALENDAR YEAR 2025 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY—Continued

| Entity | Consumption allowances allocated (MTEVe) |
|---|---|
| Metalcraft | 101,789.7 |
| Mexichem Fluor DBA Koura | 16,117,355.6 |
| Mondy Global | 201,598.7 |
| National Refrigerants | 12,528,840.8 |
| Nature Gas Import and Export | 518,455.3 |
| North American Refrigerants | 126,446.8 |
| O23 Energy Plus | 126,446.8 |
| Perfect Score Too DBA Perfect Cycle | 23,946.5 |
| Reclamation Technologies | 378,076.0 |
| Resonac America | 42,007.0 |
| RGAS | 2,893,842.3 |
| RMS of Georgia | 1,042,507.0 |
| Sciarra Laboratories | 5,500.4 |
| SDS Refrigerant Services | 126,446.8 |
| Solvay Fluorides | 697,362.9 |
| Summit Refrigerants | 126,446.8 |
| SynAgile Corporation | 711.3 |
| Technical Chemical | 2,160,215.3 |
| TradeQuim | 126,446.8 |
| Transocean Offshore Deepwater Drilling | 10.6 |
| Tulstar Products | 464,363.5 |
| Tyco Fire Products | 126,446.8 |
| USSC Acquisition Corp | 83,107.8 |
| Walmart | 1,442,587.7 |
| Waysmos USA | 354,712.2 |
| Wego Chemical Group | 35,773.6 |
| Weitron | 4,009,333.5 |
| Wesco HMB | 126,446.8 |
| Wilhelmsen Ships Service | 25,550.4 |
| Total Issued | 181,522,990.0 |

[a] See Table 1; this value corresponds to the total number of application-specific allowances allocated.

## Administrative Consequences

Separate from the allocation of calendar year 2025 allowances, EPA hereby provides notice that it also took final actions establishing administrative consequences for specific entities. Each action, which EPA took through a letter issued to the relevant entity, is a separate final action informing the recipient entity of an administrative consequence. The requirements pertaining to administrative consequences are codified in 40 CFR 84.35. Under this provision, EPA can retire, revoke, or withhold the allocation of allowances, or ban an entity from receiving, transferring, or conferring allowances. A retired allowance is one that must go unused and expire at the end of the year; a revoked allowance is one that EPA takes back from an allowance holder and redistributes to all the other eligible allowance holders; and a withheld allowance is one that is retained by the Agency until an allowance holder that has failed to meet a regulatory requirement comes back into compliance, at which point EPA allocates it to the allowance holder. More information on EPA's approach to administrative consequences can be found at 86 FR 55168.

EPA finalized administrative consequences for certain entities that were allocated application-specific allowances, listed in Table 1 for calendar year 2025. These entities failed to submit auditing reports as required in 40 CFR 84.33 and therefore EPA has withheld a portion of their allowances until the missing reports are submitted and subsequently verified by EPA: ASML US,[1] Proteng Distribution, and Wolfspeed. These final actions became effective on September 30, 2024, and are summarized below in Table 4.

TABLE 4—SUMMARY OF ADMINISTRATIVE CONSEQUENCES TAKEN PURSUANT TO 40 CFR 84.35 FOR CALENDAR YEAR 2025 APPLICATION-SPECIFIC ALLOWANCES, EFFECTIVE SEPTEMBER 30, 2024

| Entity | Number of affected allowances (MTEVe) | Administrative consequence action | Reasoning |
|---|---|---|---|
| ASML US [a] | 206.8 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |
| Proteng Distribution | 1,344.7 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |

[1] ASML US submitted an auditing report on September 27, 2024, and the Agency is reviewing that submission.

TABLE 4—SUMMARY OF ADMINISTRATIVE CONSEQUENCES TAKEN PURSUANT TO 40 CFR 84.35 FOR CALENDAR YEAR 2025 APPLICATION-SPECIFIC ALLOWANCES, EFFECTIVE SEPTEMBER 30, 2024—Continued

| Entity | Number of affected allowances (MTEVe) | Administrative consequence action | Reasoning |
|---|---|---|---|
| Wolfspeed ............................. | 3,155.9 | Withhold ................................ | Failure to submit auditing report as required in 40 CFR 84.33. |

ᵃ ASML US submitted an auditing report on September 27, 2024, and the Agency is reviewing that submission.

EPA finalized additional administrative consequences for certain entities that were allocated consumption allowances, as listed in Table 3 for calendar year 2025. These final actions affecting calendar year 2025 allowances became effective on September 30, 2024. Specifically, the following entities failed to submit auditing reports as required in 40 CFR 84.33 and therefore EPA has withheld a portion of their consumption allowances until the missing reports are filed and verified by EPA: Solvay Fluorides and Wilhelmsen Ships Service. The following entities imported regulated HFCs without expending the requisite number of consumption allowances at the time of import and therefore EPA has retired and/or revoked consumption allowances commensurate with the quantities of regulated substances imported without allowances: AFK & Co. and AutoZone Parts. Lastly, Wesco HMB sold, distributed, or offered for sale or distribution, regulated HFCs that had previously been imported in violation of EPA's import requirements contained in 40 CFR 84.5(b). A summary of these administrative consequences is included in Table 5.

TABLE 5—SUMMARY OF ADMINISTRATIVE CONSEQUENCES PURSUANT TO 40 CFR 84.35 FOR CALENDAR YEAR 2025 CONSUMPTION ALLOWANCES, EFFECTIVE SEPTEMBER 30, 2024

| Entity | Number of affected allowances (MTEVe) | Administrative consequence action | Reasoning |
|---|---|---|---|
| AFK & Co. ............................. | 941.4 | Retire | Imported regulated HFCs without expending requisite number of allowances. |
| | ᵃ 706.1 | Revoke | |
| AutoZone Parts ...................... | 21,763.1 | Retire | Imported regulated HFCs without expending requisite number of allowances. |
| | ᵇ 10,881.6 | Revoke | |
| Wesco HMB .......................... | 5,432.1 | Retire | Sold, distributed, or offered for sale or distribution regulated HFCs that were imported without the requisite expenditure of allowances. |
| | ᶜ 2,716.1 | Revoke | |
| Solvay Fluorides ................... | 139,472.6 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |
| Wilhelmsen Ships Service .... | 5,110.1 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |

ᵃ This value corresponds to 75% of the full amount of consumption without requisite allowances at the time of import. As stated in the HFC Allocation Framework Rule (86 FR 55116, Oct. 5, 2021), EPA explained it would take a 50% premium in first instances of administrative consequences. However, EPA has previously finalized administrative consequences for AFK & Co. for the same reasoning.

ᵇ As stated in the HFC Allocation Framework Rule (86 FR 55116, Oct. 5, 2021), EPA explained it would take a 50% premium in first instances of administrative consequences. This value corresponds to 50% of the full amount of consumption without requisite allowances at the time of import.

ᶜ As stated in the HFC Allocation Framework Rule (86 FR 55116, Oct. 5, 2021), EPA explained it would take a 50% premium in first instances of administrative consequences. This value corresponds to 50% of the full amount of regulated HFCs on a MTEVe-weighted basis that were sold, distributed, or offered for sale or distribution.

The Agency also finalized administrative consequences for Fike Corporation and Firetrace USA. These entities have historically submitted requests for additional consumption allowances (RACAs) under EPA's regulations contained in 40 CFR 84.17, and failed to submit auditing reports as required in 40 CFR 84.33. Therefore, EPA will withhold a portion of any calendar year 2025 consumption allowances issued to these entities until the missing reports are submitted and subsequently verified by EPA. A summary is reflected below in Table 6.

TABLE 6—SUMMARY OF ADMINISTRATIVE CONSEQUENCES PURSUANT TO 40 CFR 84.35 FOR RACA SUBMITTERS, EFFECTIVE SEPTEMBER 30, 2024

| Entity | Number of affected allowances (MTEVe) | Applicable year(s) | Administrative consequence action | Reasoning |
|---|---|---|---|---|
| Fike Corporation ....... | 20% of granted RACAs ............................................................ | 2025 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |

TABLE 6—SUMMARY OF ADMINISTRATIVE CONSEQUENCES PURSUANT TO 40 CFR 84.35 FOR RACA SUBMITTERS, EFFECTIVE SEPTEMBER 30, 2024—Continued

| Entity | Number of affected allowances (MTEVe) | Applicable year(s) | Administrative consequence action | Reasoning |
|---|---|---|---|---|
| Firetrace USA ........... | 20% of granted RACAs ............................................................ | 2025 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |

A comprehensive summary of all finalized administrative consequences with an effective date of September 30, 2024, that affect calendar year 2025 HFC allowances is contained in Table 7.

TABLE 7—CALENDAR YEAR 2025 ALLOWANCES ADJUSTED THROUGH FINALIZED ADMINISTRATIVE CONSEQUENCES PURSUANT TO 40 CFR 84.35

| Entity | Allowance type | Administrative consequence action | Number of affected allowances (MTEVe) |
|---|---|---|---|
| AFK & Co. ........................................ | Consumption ...................................... | Retire .............................................. | 941.4 |
| | | Revoke ............................................. | 706.1 |
| ASML US[a] ....................................... | Application-specific ........................... | Withhold ........................................... | 206.8 |
| AutoZone Parts .................................. | Consumption ...................................... | Retire .............................................. | 21,763.1 |
| | | Revoke ............................................. | 10,881.6 |
| Fike Corporation ................................ | Consumption ...................................... | Withhold ........................................... | 20% of granted RACAs |
| Firetrace USA .................................... | Consumption ...................................... | Withhold ........................................... | 20% of granted RACAs |
| Proteng Distribution ........................... | Application-specific ........................... | Withhold ........................................... | 1,344.7 |
| Solvay Fluorides ................................ | Consumption ...................................... | Withhold ........................................... | 139,472.6 |
| Wesco HMB ....................................... | Consumption ...................................... | Retire .............................................. | 5,432.1 |
| | | Revoke ............................................. | 2,716.1 |
| Wilhelmsen Ships Service ................. | Consumption ...................................... | Withhold ........................................... | 5,110.1 |
| Wolfspeed .......................................... | Application-specific ........................... | Withhold ........................................... | 3,155.9 |

[a] ASML US submitted an auditing report on September 27, 2024, and the Agency is reviewing that submission.

In addition to the administrative consequences listed in Table 7, 142,694.8 MTEVe of consumption allowances were retired and 509,608.2 MTEVe were revoked, consistent with previously finalized administrative consequences described in *Phasedown of Hydrofluorocarbons: Notice of 2024 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Administrative Consequences* (88 FR 72060, Oct. 19, 2023). The entities subject to those prior actions include American Air Components, Bluon, Honeywell International, and Resonac America.

*Adjustments to Application-Specific Allowances*

As described above, certain entities listed in Table 1 have had a portion of their calendar year 2025 allowances withheld for not submitting the auditing report required in 40 CFR 84.33. These allowances will be withheld until the missing reports are submitted and subsequently verified by EPA. Accordingly, Table 8 shows the number of application-specific allowances available to each entity as a result of finalized administrative consequences.

TABLE 8—NUMBER OF CALENDAR YEAR 2025 APPLICATION-SPECIFIC ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2024, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES

| Entity | Application | Available application-specific allowances (MTEVe), adjusting for administrative consequences |
|---|---|---|
| Analog Devices ............................................. | Semiconductors ........................................... | 15,998.9 |
| Applied Materials .......................................... | Semiconductors ........................................... | 2,290.4 |
| Armstrong Pharmaceuticals ......................... | Propellants in MDIs ..................................... | 237,054.0 |
| ASML US[a] .................................................... | Semiconductors ........................................... | 827.0 |
| AstraZeneca Pharmaceuticals ..................... | Propellants in MDIs ..................................... | 2,677.0 |
| Aurobindo Pharma USA ................................ | Propellants in MDIs ..................................... | 23,196.2 |
| Compsys ....................................................... | Structural Composite Preformed Polyurethane Foam ....... | 16,066.0 |
| Defense Technology ...................................... | Defense Sprays ........................................... | 5,297.2 |
| Diodes Incorporated ..................................... | Semiconductors ........................................... | 1,410.2 |
| General Electric ............................................ | Semiconductors ........................................... | 147.7 |
| GlaxoSmithKline ........................................... | Propellants in MDIs ..................................... | 507,289.7 |

TABLE 8—NUMBER OF CALENDAR YEAR 2025 APPLICATION-SPECIFIC ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2024, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES—Continued

| Entity | Application | Available application-specific allowances (MTEVe), adjusting for administrative consequences |
| --- | --- | --- |
| GlobalFoundries | Semiconductors | 117,767.1 |
| Hitachi High-Tech America | Semiconductors | 113.0 |
| IBM Corporation | Semiconductors | 613.0 |
| Intel Corporation | Semiconductors | 528,200.3 |
| Invagen Pharmaceuticals | Propellants in MDIs | 59,385.2 |
| Jireh Semiconductor | Semiconductors | 2,315.5 |
| Keysight Technologies | Semiconductors | 538.8 |
| Kindeva Drug Delivery | Propellants in MDIs | 492,000.0 |
| LA Semiconductor | Semiconductors | 2,067.3 |
| Lam Research Corp. | Semiconductors | 45,436.9 |
| Lupin | Propellants in MDIs | 19,031.0 |
| Magic Leap | Semiconductors | 516.9 |
| Medtronic Tempe Campus | Semiconductors | 455.1 |
| Microchip Technology | Semiconductors | 7,387.2 |
| Micron Technology | Semiconductors | 21,068.2 |
| Newport Fab DBA TowerJazz | Semiconductors | 4,250.5 |
| Northrop Grumman Corporation | Semiconductors | 2,793.6 |
| NXP Semiconductor | Semiconductors | 34,081.1 |
| Polar Semiconductor | Semiconductors | 9,151.7 |
| Proteng Distribution | Onboard Aerospace Fire Suppression | 5,378.7 |
| Qorvo Texas | Semiconductors | 470.0 |
| Renesas Electronics America | Semiconductors | 940.1 |
| Samsung Austin Semiconductor | Semiconductors | 235,624.8 |
| Security Equipment Corporation | Defense Sprays | 93,229.5 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 35,794.8 |
| SkyWater Technology | Semiconductors | 10,463.5 |
| Skyworks Solutions | Semiconductors | 2,067.6 |
| Taiwan Semiconductor Manufacturing Company Arizona Corporation (TSMC Arizona Corporation). | Semiconductors | 120,485.4 |
| Texas Instruments | Semiconductors | 214,219.4 |
| The Research Foundation for The State University of New York at NY CREATES. | Semiconductors | 11,678.4 |
| Tokyo Electron U.S. Holdings, Inc. | Semiconductors | 5,123.9 |
| Tower Semiconductor San Antonio | Semiconductors | 3,290.4 |
| TSMC Washington (formerly WaferTech) | Semiconductors | 10,384.5 |
| UC San Diego | Semiconductors | 940.1 |
| UDAP Industries | Defense Sprays | 110,727.8 |
| Wabash National Corporation | Structural Composite Preformed Polyurethane Foam | 49,299.5 |
| Wolfspeed | Semiconductors | 12,623.8 |
| X–FAB Texas | Semiconductors | 1,262.5 |
| Department of Defense | Mission-critical Military End Uses | 6,238,033.5 |
| Total Available | All | 9,321,464.9 |

ᵃ ASML US submitted an auditing report on September 27, 2024, and the Agency is reviewing that submission.

## Adjustments to Consumption Allowances

An entity is eligible to receive redistributed allowances if they were not subject to administrative consequences that took effect on the same day (except entities that had allowances withheld). For example, if EPA revoked 50 MTEVe allowances from company A and 50 MTEVe allowances from company B, effective on the same day, EPA's redistribution of that single pool of 100 MTEVe allowances would go to all general pool allowances holders except company A and company B. This applies regardless of whether the revocation happens in one year or over multiple years. However, entities who only had allowances withheld by the Agency as a result of failure to comply with the auditing requirements as contained in 40 CFR 84.33 were eligible to receive allowances that were redistributed.

For 2025, the total number of revoked and redistributed allowances is 523,912.0 MTEVe, which are being apportioned to eligible consumption allowance holders based on their relative market share, and the total number of retired allowances in 2025 is 170,831.4 MTEVe. These amounts are the result of administrative consequences with two distinct effective dates. For more information on the administrative consequences finalized in 2023 that impact calendar year 2025 consumption allowances, see *Phasedown of Hydrofluorocarbons: Notice of 2024 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Administrative Consequences* (88 FR 72060, Oct. 19, 2023).

Table 9 reflects consumption allowance totals available to each entity as of October 1, 2024, after taking into account the administrative

consequences and eligibility described
elsewhere in this notice.

TABLE 9—TOTAL NUMBER OF CALENDAR YEAR 2025 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2024, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES

| Entity | Available consumption allowances, adjusted for all administrative consequences (MTEVe) |
|---|---|
| Application-specific allowances | [a] 9,321,464.9 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 127,006.0 |
| Ability Refrigerants | 127,006.0 |
| ACT Commodities | 49.4 |
| Advance Auto Parts | 454,129.5 |
| Advanced Specialty Gases | 181,274.3 |
| AFK & Co | 120,586.1 |
| AFS Cooling | 127,006.0 |
| A-Gas | 2,165,990.0 |
| Air Liquide USA | 316,740.9 |
| American Air Components [b] | 0.0 |
| Arkema | 19,743,794.0 |
| Artsen | 650,046.9 |
| Automart Distributors DBA Refrigerant Plus | 127,006.0 |
| AutoZone Parts | 1,251,215.7 |
| AW Product Sales & Marketing | 76,793.5 |
| Bluon [b] | 0.0 |
| CC Packaging | 123,195.8 |
| Chemours | 21,775,580.8 |
| Chemp Technology | 127,006.0 |
| ChemPenn | 14,122.6 |
| ComStar International | 228,938.8 |
| Creative Solution | 127,006.0 |
| Cross World Group | 127,006.0 |
| Daikin America | 1,982,882.5 |
| EDX Industry | 365,186.7 |
| Electronic Fluorocarbons | 65,973.7 |
| Fireside Holdings DBA American Refrigerants | 126,992.3 |
| First Continental International | 489,116.1 |
| FluoroFusion Specialty Chemicals | 1,614,745.2 |
| Freskoa USA | 127,006.0 |
| GlaxoSmithKline | 342,003.0 |
| Golden Refrigerant | 127,006.0 |
| Harp USA | 486,407.0 |
| Honeywell International | 51,631,535.0 |
| Hudson Technologies | 2,138,919.7 |
| Hungry Bear | 127,006.0 |
| ICool USA | 2,164,632.9 |
| IGas Holdings | 16,587,997.7 |
| Iofina Chemical | 803.9 |
| Kidde-Fenwal | 127,006.0 |
| Lenz Sales & Distribution | 705,440.7 |
| Lina Trade | 127,006.0 |
| Linde | 338,329.0 |
| Matheson Tri-Gas | 21,677.4 |
| MEK Chemical Corporation | 52,749.3 |
| Meraki Group | 127,006.0 |
| Metalcraft | 102,239.8 |
| Mexichem Fluor DBA Koura | 16,188,629.9 |
| Mondy Global | 202,490.2 |
| National Refrigerants | 12,584,245.9 |
| Nature Gas Import and Export | 520,748.2 |
| North American Refrigerants | 127,006.0 |
| O23 Energy Plus | 127,006.0 |
| Perfect Score Too DBA Perfect Cycle | 24,052.4 |
| Reclamation Technologies | 379,747.9 |
| Resonac America [b] | 0.0 |
| RGAS | 2,906,639.4 |
| RMS of Georgia | 1,047,117.2 |
| Sciarra Laboratories | 5,524.8 |
| SDS Refrigerant Services | 127,006.0 |
| Solvay Fluorides | 560,974.1 |
| Summit Refrigerants | 127,006.0 |

TABLE 9—TOTAL NUMBER OF CALENDAR YEAR 2025 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2024, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES—Continued

| Entity | Available consumption allowances, adjusted for all administrative consequences (MTEVe) |
|---|---|
| SynAgile Corporation | 714.5 |
| Technical Chemical | 2,169,768.2 |
| TradeQuim | 127,006.0 |
| Transocean Offshore Deepwater Drilling | 10.6 |
| Tulstar Products | 466,417.0 |
| Tyco Fire Products | 127,006.0 |
| USSC Acquisition Corp | 83,475.4 |
| Walmart | 1,448,967.1 |
| Waysmos USA | 356,280.8 |
| Wego Chemical Group | 35,931.8 |
| Weitron | 4,027,063.6 |
| Wesco HMB | 118,847.2 |
| Wilhelmsen Ships Service | 20,553.2 |

ᵃ See Table 8; this value corresponds to the total number of application-specific allowances available on October 1, 2024, after adjusting for administrative consequences.

ᵇ While these entities were eligible for revoked and redistributed consumption allowances with an effective date of September 30, 2024, the Agency has previously finalized administrative consequences for them stating that "[EPA] [w]ill retire and revoke allowances until the full administrative consequence is covered" (88 FR 72060, Oct. 19, 2023).

*Judicial Review*

The AIM Act provides that certain sections of the Clean Air Act (CAA) "shall apply to" the AIM Act and actions "promulgated by the Administrator of [EPA] pursuant to [the AIM Act] as though [the AIM Act] were expressly included in title VI of [the CAA]." 42 U.S.C. 7675(k)(1)(C). Among the applicable sections of the CAA is section 307, which includes provisions governing judicial review. 42 U.S.C. 7607(b)(1). Section 307(b)(1) provides, in part, that petitions for review must only be filed in the United States Court of Appeals for the District of Columbia Circuit: (i) When the agency action consists of "nationally applicable regulations promulgated, or final actions taken, by the Administrator," or (ii) when such action is locally or regionally applicable, but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." For locally or regionally applicable final actions, the CAA reserves to the EPA complete discretion whether to invoke the exception in (ii).

The issuance of calendar year 2025 allowances for the production and consumption of hydrofluorocarbons herein noticed is "nationally applicable" within the meaning of CAA section 307(b)(1). The AIM Act imposes a national cap on the total number of allowances available for each year for all entities nationwide. 42 U.S.C. 7675(e)(2)(B)–(D). For 2025, there was a national pool of 229,521,263 production

allowances and 181,522,990 consumption allowances available to distribute. The allocation action noticed herein distributed that finite set of allowances consistent with the methodology EPA established in the nationally applicable framework rule. As such, the allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations. Each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affects the allocations to others.

In the alternative, to the extent a court finds the final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that the allocation action is based on a determination of "nationwide scope or effect" within the meaning of CAA section 307(b)(1).² In deciding to invoke this exception, the Administrator has taken into account a number of policy considerations, including his judgment regarding the benefit of obtaining the D.C. Circuit's authoritative centralized review, rather than allowing development of the issue

in other contexts, in order to ensure consistency in the Agency's approach to allocation of allowances in accordance with EPA's national regulations in 40 CFR part 84. The final action treats all affected entities consistently in how the 40 CFR part 84 regulations are applied. The allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations, and each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affect the allocations to others. The Administrator finds that this is a matter on which national uniformity is desirable to take advantage of the D.C. Circuit's administrative law expertise and facilitate the orderly development of the basic law under the AIM Act and EPA's implementing regulations. The Administrator also finds that consolidated review of the action in the D.C. Circuit will avoid piecemeal litigation in the regional circuits, further judicial economy, and eliminate the risk of inconsistent results for different regulated entities. The Administrator also finds that a nationally consistent approach to the allocation of allowances constitutes the best use of agency resources. The Administrator is publishing his finding that the allocation action is based on a determination of nationwide scope or effect in the **Federal Register** as part of this notice.

---

² In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the "nationwide scope or effect" exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

For these reasons, the final action of the Agency allocating hydrofluorocarbon allowances to entities located throughout the country is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and finds that the final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is hereby publishing that finding in the **Federal Register**.

Under section 307(b)(1) of the CAA, petitions for judicial review of this allocation action must be filed in the United States Court of Appeals for the District of Columbia Circuit by December 23, 2024.

Each adjudicatory action establishing an administrative consequence as described in this notice is a final action previously taken by EPA. Under section 307(b)(1) of the CAA, any petition for judicial review of such a final action must be filed in the United States Court of Appeals for the appropriate circuit by December 23, 2024.

Filing a petition for reconsideration by the Administrator does not affect the finality of any action noticed herein for purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and shall not postpone the effectiveness of such action. The final actions described herein may not be challenged later in proceedings to enforce their requirements. 42 U.S.C. 7607(b)(2).

**Paul M. Gunning,**
*Director, Office of Atmospheric Protection.*
[FR Doc. 2024–24444 Filed 10–22–24; 8:45 am]
**BILLING CODE 6560–50–P**

# FEDERAL COMMUNICATIONS COMMISSION

[OMB 3060–0473; FR ID 255992]

## Information Collections Being Reviewed by the Federal Communications Commission Under Delegated Authority

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, and as required by the Paperwork Reduction Act of 1995 (PRA), the Federal Communications Commission (FCC or Commission) invites the general public and other Federal agencies to take this opportunity to comment on the following information collections.

Comments are requested concerning: whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; the accuracy of the Commission's burden estimate; ways to enhance the quality, utility, and clarity of the information collected; ways to minimize the burden of the collection of information on the respondents, including the use of automated collection techniques or other forms of information technology; and ways to further reduce the information collection burden on small business concerns with fewer than 25 employees. The FCC may not conduct or sponsor a collection of information unless it displays a currently valid Office of Management and Budget (OMB) control number. No person shall be subject to any penalty for failing to comply with a collection of information subject to the PRA that does not display a valid OMB control number.

**DATES:** Written PRA comments should be submitted on or before December 23, 2024. If you anticipate that you will be submitting comments but find it difficult to do so within the period of time allowed by this notice, you should advise the contact listed below as soon as possible.

**ADDRESSES:** Direct all PRA comments to Cathy Williams, FCC, via email to *PRA@fcc.gov* and to *Cathy.Williams@fcc.gov.*

**FOR FURTHER INFORMATION CONTACT:** For additional information about the information collection, contact Cathy Williams at (202) 418–2918.

**SUPPLEMENTARY INFORMATION:**
*OMB Control Number:* 3060–0473.
*Title:* Section 74.1251, Technical and Equipment Modifications.
*Type of Review:* Extension of a currently approved collection.
*Respondents:* Businesses or other for-profit entities; not-for-profit institutions.
*Number of Respondents and Responses:* 100 respondents; 300 responses.
*Estimated Time per Response:* 0.25 hour.
*Frequency of Response:* Recordkeeping requirement; One-time reporting requirement.
*Obligation To Respond:* Required to obtain or retain benefits. The statutory authority for this collection is contained in Sections 154(i) and 325(a) of the Communications Act of 1934, as amended.
*Total Annual Burden:* 75 hours.
*Total Annual Cost:* No cost.
*Needs and Uses:* The information collection requirements contained in 47

CFR 74.1251(b)(1) state that formal application on FCC Form 349 is required of all permittees and licensees for any of the following changes: Replacement of the transmitter as a whole, except replacement with a transmitter of identical power rating which has been certificated by the FCC for use by FM translator or FM booster stations, or any change which could result in the electrical characteristics or performance of the station. Upon the installation or modification of the transmitting equipment for which prior FCC authority is not required under the provisions of this paragraph, the licensee shall place in the station records a certification that the new installation complies in all respects with the technical requirements of this part and the terms of the station authorization.

The information collection requirements contained in 47 CFR 74.1251(c) require FM translator licensee to notify the FCC, in writing, of changes in the primary FM station being retransmitted.

Federal Communications Commission.

**Marlene Dortch,**
*Secretary, Office of the Secretary.*
[FR Doc. 2024–24539 Filed 10–22–24; 8:45 am]
**BILLING CODE 6712–01–P**

# FEDERAL COMMUNICATIONS COMMISSION

[OMB 3060–0692; FR ID 255998]

## Information Collections Being Reviewed by the Federal Communications Commission

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, and as required by the Paperwork Reduction Act of 1995 (PRA), the Federal Communications Commission (FCC or Commission) invites the general public and other Federal agencies to take this opportunity to comment on the following information collections. Comments are requested concerning: whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; the accuracy of the Commission's burden estimate; ways to enhance the quality, utility, and clarity of the information collected; ways to minimize the burden of the collection of

# EXHIBIT B

**Larry Joseph**

| | |
|---|---|
| **From:** | OAP_Correspondence <OAP_Correspondence@epa.gov> |
| **Sent:** | Friday, November 15, 2024 3:56 PM |
| **To:** | gordona123@earthlink.net; Larry Joseph |
| **Cc:** | HFCAllocation |
| **Subject:** | Response to Petitions for Reconsideration - HFC Allocation Program |
| **Attachments:** | Petition for Reconsideration Response.pdf; 2022-03-31 - New Era Group signed.pdf |

Dear Mr. Arbuckle and Mr. Joseph:

Thank you for submitting to the Environmental Protection Agency letters dated April 20, 2022, and December 12, 2022. A response and an enclosure are attached.

Thank you,

Office of Atmospheric Protection
Office of Air and Radiation
U.S. EPA



**ASSISTANT ADMINISTRATOR FOR AIR AND RADIATION**

WASHINGTON, D.C. 20460

November 8, 2024

<u>SENT VIA ELECTRONIC MAIL</u>

Mr. J. Gordon Arbuckle, Esq.
2550 M Street NW
Washington, D.C.  20037
gordona123@earthlink.net

Mr. Lawrence J. Joseph, Esq.
1250 Connecticut Avenue, NW
Suite 700-1A
Washington, D.C.  20036
ljoseph@larryjoseph.com

Dear Mr. Arbuckle and Mr. Joseph:

The U.S. Environmental Protection Agency (EPA) is responding to the letter received from Mr. Gordon Arbuckle dated April 20, 2022, and the letter received from Mr. Lawrence J. Joseph dated December 12, 2022, both of which were sent on behalf of Peter Williams (dba The New Era Group). We are responding to these letters as petitions for reconsideration of an informal adjudication under section 555(e) of the Administrative Procedures Act. The letters requested that the EPA reconsider the Agency's March 31, 2022, denial of Peter Williams (dba The New Era Group)'s application for hydrofluorocarbon (HFC) set-aside allowances under 40 CFR 84.15(c). The EPA is denying the requests to reconsider the above-cited action and is affirming its prior denial without reopening that decision.

The EPA's March 31, 2022, denial, which is enclosed, cited two reasons for denying the application from Peter Williams (dba The New Era Group). First, the EPA determined that Peter Williams (dba The New Era Group) "share[s] corporate or common ownership, corporate affiliation in the past five years, or familial relations" with an entity receiving allowances. Second, the application from Peter Williams (dba The New Era Group) was incomplete for failing to comply with EPA's regulations at 40 CFR 84.15(d)(2), which require applicants to provide among other requirements, "the complete ownership of the company (with percentages of ownership)," *see* 40 CFR 84.15(d)(2)(i), "[t]he date of incorporation and State in which the company is incorporated," *see* 40 CFR 84.15(d)(2)(iv), and the "State license identifier," *see* 40 CFR 84.15(d)(2)(v).

While the April 20, 2022, and December 12, 2022, requests seem to assert material error in the original denial, these requests fail to allege any new evidence or changed circumstance that warrants reconsideration of the EPA's March 31, 2022, decision to deny your client's new market entrant application. All of the information contained in the April 20, 2022, and December 12, 2022, letters was available to, and within the control of, Peter Williams (dba The New Era Group) before the EPA first acted. Such information is not new evidence or a demonstration of changed circumstance for purposes of a petition for reconsideration. To the extent any information could be considered new evidence, your client could have provided, and did not provide, that information to the EPA before the Agency reached its decision on March 31, 2022. *See Sendra Corp. v. Magaw*, 111 F.3d 162, 166 (D.C. Cir. 1997). As a result, the EPA is denying the requests to reconsider the above-cited action; it is affirming its prior denial and has not reopened its original March 31, 2022, decision.

Thank you for your respective letters. I appreciate your interest in these issues.

Sincerely,

Joseph Goffman
Assistant Administrator

Enclosure

cc:   Peter Williams
      dba The New Era Group



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

March 31, 2022

OFFICE OF
AIR AND RADIATION

Mr. Peter Williams
New Era Group
709 Pickering Drive Unit B
Murrells Inlet, South Carolina 29567

Dear Mr. Peter Williams,

This letter communicates EPA's decision regarding Peter Williams DBA New Era Group (New Era Group)'s application for set-aside allowances under 40 CFR § 84.15(c). In accordance with the methodology finalized in the final Hydrofluorocarbon (HFC) Allowance Allocation and Trading Framework Rule (HFC Allocation Framework Rule), EPA issued allowances on October 1, 2021, to companies that had provided data on their historic import and production of HFCs, as well as entities that use HFCs in six applications specified by Congress. EPA also established the set-aside pool of allowances for a limited set of end users and importers (*see* 86 FR 55116). The set-aside pool of allowances was established for three groups: end users that qualify for application-specific allowances; existing importers that were not required to report under 40 CFR part 98 (i.e., the Greenhouse Gas Reporting Program); and new market entrants. New Era Group submitted an application for set-aside allowances as a new market entrant. The regulatory language specifies that set-aside allowances are available for entities "who are newly importing regulated substances, do not share corporate or common ownership, corporate affiliation in the past five years, or familial relations with entities receiving allowances through this rule." 40 CFR § 84.15(c)(2). EPA also explained in the final rule that new market entrants may include companies that had previously imported HFCs in any prior year but exited the business by 2020 and who did not otherwise qualify to receive general pool allowances (*see* 86 FR 55157).

After reviewing New Era Group's set-aside application and supporting information available to the Agency, EPA has determined that New Era Group is not eligible for allowances under the set-aside pool as a new market entrant and is therefore denying New Era Group's application. Based on the information before the Agency, EPA has determined that New Era Group does "share corporate or common ownership, corporate affiliation in the past five years, or familial relations" with an entity receiving allowances through this rule, specifically RMS of Georgia. Public data available to the Agency from the State of Georgia Secretary of State confirms that you and the owner of a company who received allowances under the final HFC Allocation Framework Rule are both listed as officers for "New Era Group Inc" as recently as 2019. This equates to corporate affiliation in the past five years with an entity receiving allowances through this rule, and therefore disqualifies New Era Group's application in accordance with EPA's regulations.

Further, the application submitted for new market entrant set-aside allowances was incomplete. EPA regulations at 40 CFR § 84.15(d)(2) require applicants "to be eligible for consideration" to provide "the complete ownership of the company (with percentages of ownership)" 40 CFR § 84.15(d)(2)(i). After Agency outreach explaining the relevant requirements, information submitted by the applicant failed to show the complete ownership of the company (with percentages of ownership). New Era Group also failed to provide as part of its application, "The date of incorporation and State in which the company is incorporated" 40 CFR § 84.15(d)(2)(iv), and the "State license identifier" 40 CFR § 84.15(d)(2)(v). For these reasons, EPA is denying New Era Group's application.

As of January 1, 2022, if New Era Group chooses to import any of the HFCs listed at 40 CFR Part 84 Appendix A, or blends containing any of those HFCs, the company will need to acquire allowances from another allowance holder by the time of import.

If you have questions about the content of this letter, please contact us at HFCAllocation@epa.gov. More information about the regulatory requirements, including fact sheets, frequently asked questions, and a list of existing allowance holders is available at https://www.epa.gov/climate-hfcs-reduction.

Sincerely,

Cynthia A. Newberg
Director, Stratospheric Protection Division

# EXHIBIT C



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

March 31, 2022

OFFICE OF
AIR AND RADIATION

Mr. Peter Williams
New Era Group
709 Pickering Drive Unit B
Murrells Inlet, South Carolina 29567

Dear Mr. Peter Williams,

This letter communicates EPA's decision regarding Peter Williams DBA New Era Group (New Era Group)'s application for set-aside allowances under 40 CFR § 84.15(c). In accordance with the methodology finalized in the final Hydrofluorocarbon (HFC) Allowance Allocation and Trading Framework Rule (HFC Allocation Framework Rule), EPA issued allowances on October 1, 2021, to companies that had provided data on their historic import and production of HFCs, as well as entities that use HFCs in six applications specified by Congress. EPA also established the set-aside pool of allowances for a limited set of end users and importers (*see* 86 FR 55116). The set-aside pool of allowances was established for three groups: end users that qualify for application-specific allowances; existing importers that were not required to report under 40 CFR part 98 (i.e., the Greenhouse Gas Reporting Program); and new market entrants. New Era Group submitted an application for set-aside allowances as a new market entrant. The regulatory language specifies that set-aside allowances are available for entities "who are newly importing regulated substances, do not share corporate or common ownership, corporate affiliation in the past five years, or familial relations with entities receiving allowances through this rule." 40 CFR § 84.15(c)(2). EPA also explained in the final rule that new market entrants may include companies that had previously imported HFCs in any prior year but exited the business by 2020 and who did not otherwise qualify to receive general pool allowances (*see* 86 FR 55157).

After reviewing New Era Group's set-aside application and supporting information available to the Agency, EPA has determined that New Era Group is not eligible for allowances under the set-aside pool as a new market entrant and is therefore denying New Era Group's application. Based on the information before the Agency, EPA has determined that New Era Group does "share corporate or common ownership, corporate affiliation in the past five years, or familial relations" with an entity receiving allowances through this rule, specifically RMS of Georgia. Public data available to the Agency from the State of Georgia Secretary of State confirms that you and the owner of a company who received allowances under the final HFC Allocation Framework Rule are both listed as officers for "New Era Group Inc" as recently as 2019. This equates to corporate affiliation in the past five years with an entity receiving allowances through this rule, and therefore disqualifies New Era Group's application in accordance with EPA's regulations.

Internet Address (URL) • http://www.epa.gov
Recycled/Recyclable • Printed with Vegetable Oil Based Inks on 100% Postconsumer, Process Chlorine Free Recycled paper

Further, the application submitted for new market entrant set-aside allowances was incomplete. EPA regulations at 40 CFR § 84.15(d)(2) require applicants "to be eligible for consideration" to provide "the complete ownership of the company (with percentages of ownership)" 40 CFR § 84.15(d)(2)(i). After Agency outreach explaining the relevant requirements, information submitted by the applicant failed to show the complete ownership of the company (with percentages of ownership). New Era Group also failed to provide as part of its application, "The date of incorporation and State in which the company is incorporated" 40 CFR § 84.15(d)(2)(iv), and the "State license identifier" 40 CFR § 84.15(d)(2)(v). For these reasons, EPA is denying New Era Group's application.

As of January 1, 2022, if New Era Group chooses to import any of the HFCs listed at 40 CFR Part 84 Appendix A, or blends containing any of those HFCs, the company will need to acquire allowances from another allowance holder by the time of import.

If you have questions about the content of this letter, please contact us at HFCAllocation@epa.gov. More information about the regulatory requirements, including fact sheets, frequently asked questions, and a list of existing allowance holders is available at https://www.epa.gov/climate-hfcs-reduction.

Sincerely,

Cynthia A. Newberg
Director, Stratospheric Protection Division

# EXHIBIT D

you mail to EPA, mark the outside of the disk or CD–ROM as CBI and then identify electronically within the disk or CD–ROM the specific information that is claimed as CBI. In addition to one complete version of the comment that includes information claimed as CBI, a copy of the comment that does not contain the information claimed as CBI must be submitted for inclusion in the public docket. Information so marked will not be disclosed except in accordance with procedures set forth in 40 CFR part 2.

2. *Tips for preparing your comments.* When preparing and submitting your comments, see the commenting tips at *https://www.epa.gov/dockets/ comments.html*.

3. *Environmental justice.* EPA seeks to achieve environmental justice, the fair treatment and meaningful involvement of any group, including minority and/or low-income populations, in the development, implementation, and enforcement of environmental laws, regulations, and policies. To help address potential environmental justice issues, the Agency seeks information on any groups or segments of the population who, as a result of their location, cultural practices, or other factors, may have atypical or disproportionately high and adverse human health impacts or environmental effects from exposure to the pesticides discussed in this document, compared to the general population.

## II. Background

Registration review is EPA's periodic review of pesticide registrations to ensure that each pesticide continues to satisfy the statutory standard for registration, that is, the pesticide can perform its intended function without unreasonable adverse effects on human health or the environment. As part of the registration review process, the Agency has completed proposed interim decisions for spirodiclofen. Through this program, EPA is ensuring that each pesticide's registration is based on current scientific and other knowledge, including its effects on human health and the environment.

## III. Authority

EPA is conducting its registration review of spirodiclofen pursuant to section 3(g) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) and the Procedural Regulations for Registration Review at 40 CFR part 155, subpart C. Section 3(g) of FIFRA provides, among other things, that the registrations of pesticides are to be reviewed every 15 years. Under FIFRA, a pesticide product may be registered or remain registered only if it meets the statutory standard for registration given in FIFRA section 3(c)(5) (7 U.S.C. 136a(c)(5)). When used in accordance with widespread and commonly recognized practice, the pesticide product must perform its intended function without unreasonable adverse effects on the environment; that is, without any unreasonable risk to man or the environment, or a human dietary risk from residues that result from the use of a pesticide in or on food.

## IV. What action is the Agency taking?

Pursuant to 40 CFR 155.58, this notice announces the availability of EPA's proposed interim decision for spirodiclofen as shown in the following table and opens a 60-day public comment period on the proposed interim registration review decision.

### TABLE—PROPOSED INTERIM DECISION BEING MADE AVAILABLE FOR PUBLIC COMMENT

| Registration review case name and number | Docket ID No. | Chemical review manager and contact information |
|---|---|---|
| Spirodiclofen (Case 7443) .................. | EPA–HQ–OPP–2014–0262 | Veronica Dutch, *dutch.veronica@epa.gov*, (202) 566–2352. |

The registration review docket for a pesticide includes earlier documents related to the registration review case. For example, the review opened with a Preliminary Work Plan, for public comment. A Final Work Plan was placed in the docket following public comment on the Preliminary Work Plan.

The documents in the docket describe EPA's rationales for conducting additional risk assessments for the registration review of spirodiclofen, as well as the Agency's subsequent risk findings and consideration of possible risk mitigation measures. This proposed interim registration review decision is supported by the rationale included in those documents. Following public comment, the Agency will issue an interim or final registration review decision for spirodiclofen.

The registration review final rule at 40 CFR 155.58(a) provides for a minimum 60-day public comment period on all proposed interim registration review decisions. This comment period is intended to provide an opportunity for public input and a mechanism for initiating any necessary amendments to the proposed interim decision. All comments should be submitted using the methods in **ADDRESSES** and must be received by EPA on or before the closing date. These comments will become part of the docket for spirodiclofen. Comments received after the close of the comment period will be marked "late." EPA is not required to consider these late comments.

The Agency will carefully consider all comments received by the closing date and may provide a "Response to Comments Memorandum" in the docket. The interim registration review decision will explain the effect that any comments had on the interim decision and provide the Agency's response to significant comments.

Background on the registration review program is provided at: *https:// www.epa.gov/pesticide-reevaluation.*

(Authority: 7 U.S.C. 136 *et seq.*)

Dated: March 30, 2022.

**Mary Elissa Reaves,**
*Director, Pesticide Re-Evaluation Division, Office of Pesticide Programs.*

[FR Doc. 2022–07076 Filed 4–4–22; 8:45 am]

**BILLING CODE 6560–50–P**

## ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2021–0669; FRL–9116–02– OAR]

## Phasedown of Hydrofluorocarbons: Notice of 2022 Set-Aside Pool Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA) is providing notice that on March 31, 2022, the Agency issued hydrofluorocarbon allowances to applicants that met the applicable

criteria from the set-aside pool established in EPA's 2021 final rule titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program under the American Innovation and Manufacturing Act.* In accordance with this final rule, the Agency redistributed allowances remaining in the set-aside pool to entities that received general pool production and consumption allowances on October 1, 2021. Both the set-aside allocation and the general pool reallocation were announced on the Agency's website on March 31, 2022, and entities were notified either by letter or electronic mail of the allocation decisions. The Agency also provided notice to certain companies on March 31, 2022, that the Agency intends to retire an identified set of those companies' allowances in accordance with the administrative consequences provisions established in the final rule.

**FOR FURTHER INFORMATION CONTACT:**
Andy Chang, U.S. Environmental Protection Agency, Stratospheric Protection Division, telephone number: 202–564–6658; email address: *chang.andy@epa.gov.* You may also visit EPA's website at *https://www.epa.gov/climate-hfcs-reduction* for further information.

**SUPPLEMENTARY INFORMATION:** In EPA's rulemaking titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program under the American Innovation and Manufacturing Act* (86 FR 55116, Oct. 5, 2021), EPA established a set-aside pool of allowances and codified at 40 CFR 84.15 criteria related to eligibility for the set-aside pool allowances, and how EPA would determine the level of allowances to allocate to each eligible entity. On March 31, 2022, EPA issued allowance allocations consistent with this section and posted the updated list of allowance holders on its website at *https://www.epa.gov/climate-hfcs-reduction.* The set-aside pool was established for three general categories of applicants: Application-specific end users (40 CFR 84.15(b)(1)), entities that imported regulated substances [1] in 2020 that were not required to report under 40 CFR part 98 (*i.e.,* the Greenhouse Gas Reporting Program (GHGRP)) and were not issued allowances as of October 1, 2021 (40

CFR 84.15(c)(1)), and new market entrants (40 CFR 84.15(c)(2)).

Under 40 CFR 84.15, application-specific allowances from the set-aside pool are subject to the same conditions for such allowances in 40 CFR 84.13. These allowances are drawn from both the production and consumption set-aside allowance pools, and EPA is issuing application-specific allowances from the set-aside pool to applicants that qualify as end users in the applications established by the American Innovation and Manufacturing (AIM) Act. The following applications were eligible for application-specific allowances under the set-aside pool: Propellants in metered dose inhalers (MDI), defense sprays, structural composite preformed polyurethane foam for marine use and trailer use, etching of semiconductor material or wafers and the cleaning of chemical vapor deposition chambers within the semiconductor manufacturing sector, and onboard aerospace fire suppression.

Consistent with the provisions in 40 CFR 84.15, EPA has allocated set-aside pool application-specific allowances to the entities listed in Table 1.

TABLE 1—SET-ASIDE APPLICATION-SPECIFIC ALLOWANCES FOR CALENDAR YEAR 2022

| Applicant | Application | Number of application-specific allowances issued (MTEVe) |
|---|---|---|
| Armstrong Pharmaceuticals | Metered Dose Inhalers | 111,059.3 |
| AstraZeneca Pharmaceuticals | Metered Dose Inhalers | 2,122.7 |
| Aurobindo Pharma USA | Metered Dose Inhalers | 71,177.4 |
| Invagen Pharmaceuticals | Metered Dose Inhalers | 28,121.3 |
| Odin Pharmaceuticals | Metered Dose Inhalers | 9,473.8 |
| Wabash National Corporation | Structural Composite Foam | 36,686.6 |
| IBM Corporation | Semiconductors | 1,440.0 |
| NXP Semiconductor | Semiconductors | 5,040.8 |
| The Research Foundation for The State University of New York OBO SUNY Polytechnic Institute. | Semiconductors | 1,245.4 |
| SkyWater Technology | Semiconductors | 15,689.3 |
| Skyworks Solutions | Semiconductors | 6,978.5 |
| Proteng Distribution | Onboard aerospace fire suppression | 12,075.0 |
| Total | | 301,110.1 |

EPA received three applications by the deadline of December 6, 2021, for allowances under the second set-aside category. Under the provisions of 40 CFR 84.15(c)(1), in order to be eligible for this category an applicant had to:

(1) Import regulated substances in 2020;

(2) not be required to report under 40 CFR part 98 (*i.e.,* the GHGRP); and

(3) not receive allowances from EPA on October 1, 2021.

All three applicants, MEK Chemical Corporation, Siemens Industry, and Wegochem International, were denied allowances because they are ineligible under 40 CFR 84.15(c)(1). The entities were required to report to the GHGRP under 40 CFR part 98.

Under the third set-aside category, for new market entrants, 45 entities

submitted applications by the deadline of December 6, 2021. EPA is denying applications from seven entities, CAILLECH LLC, ChemPenn, LLC, ComStar International Inc., ISOSTU LLC, J&J AC Supply Inc, Kim Stilwell, and Peter Williams DBA New Era Group, because they are ineligible under 40 CFR 84.15(c)(2). The applicants were ineligible for at least one of the following reasons:

---

[1] *Regulated substance* means a hydrofluorocarbon listed in the table contained in subsection (c)(1) of the AIM Act and a substance included as a regulated substance by the Administrator under the authority granted in subsection (c)(3). The list of regulated substances is available at Appendix A to 40 CFR part 84.

(1) Did not submit complete applications,

(2) were not newly importing regulated substances, or

(3) shared corporate or common ownership, corporate affiliation in the past five years, or familial relations with entities receiving allowances on October 1, 2021.

Consistent with the provisions in 40 CFR 84.15, EPA has allocated allowances for new market entrants to the entities listed in Table 2.

TABLE 2—SET-ASIDE NEW MARKET ENTRANT ALLOWANCES FOR CALENDAR YEAR 2022

| Applicant name | Number of consumption allowances issued (MTEVe) |
| --- | --- |
| Ability Refrigerants | 200,000.0 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 200,000.0 |
| ACT Commodities | 77.8 |
| Advance Auto Parts | 190,699.1 |
| AFK & Co | 193,335.9 |
| AFS Cooling | 200,000.0 |
| AllCool Refrigerant Reclaim | 200,000.0 |
| American Air Components | 200,000.0 |
| Automart Distributors DBA Refrigerant Plus | 200,000.0 |
| CC Packaging | 194,000.0 |
| Certified Refrigerant Services | 200,000.0 |
| Chemp Technology | 200,000.0 |
| Creative Solution | 200,000.0 |
| Cross World Group | 200,000.0 |
| EDX Industry | 200,000.0 |
| Fireside Holdings DBA American Refrigerants | 199,978.5 |
| Freskoa USA | 200,000.0 |
| Golden Refrigerant | 200,000.0 |
| Hungry Bear | 200,000.0 |
| Kidde-Fenwal | 200,000.0 |
| Lina Trade | 200,000.0 |
| Meraki Group | 200,000.0 |
| Metalcraft | 161,000.0 |
| North American Refrigerants | 200,000.0 |
| O23 Energy Plus | 200,000.0 |
| Perfect Score Too DBA Perfect Cycle | 37,876.0 |
| Reclamation Technologies | 200,000.0 |
| RTR Suppliers | 198,000.0 |
| Saalok | 200,000.0 |
| Sciarra Laboratories | 8,700.0 |
| SDS Refrigerant Services | 200,000.0 |
| Summit Refrigerants | 200,000.0 |
| SynAgile Corporation | 1,125.1 |
| TradeQuim | 200,000.0 |
| Tyco Fire Products | 200,000.0 |
| USA United Suppliers of America DBA USA Refrigerants | 200,000.0 |
| USSC Acquisition Corp | 131,451.0 |
| Wesco HMB | 200,000.0 |
| Total | 6,716,243.4 |

EPA notes the restrictions in 40 CFR 84.15(e)(3) that new market entrants are allocated up to 0.2 MMTEVe (200,000 MTEVe) for calendar year 2022. Accordingly, entities that requested more than 200,000 MTEVe as a new market were allocated the regulatory maximum of 200,000 MTEVe. And, in accordance with 40 CFR 84.15(f)(1) set-aside allowances allocated to new market entrants cannot be transferred.

After making the allocations noted in Tables 1 and 2, there were 2,198,889.9 production allowances and 482,646.5 consumption allowances remaining in the set-aside pool. In accordance with 40 CFR 84.15(e)(4), those allowances have been distributed to the October 1, 2021, general pool allowance holders on a pro rata basis. EPA has made this pro rata distribution as shown in Tables 3 and 4.

TABLE 3—SET-ASIDE PRODUCTION ALLOWANCES DISTRIBUTED PURSUANT TO 40 CFR 84.15(e)(4)

| Entity | Number of production allowances issued (MTEVe) |
| --- | --- |
| Arkema | 265,221.2 |
| Chemours | 491,227.0 |
| Honeywell International | 1,114,441.9 |

TABLE 3—SET-ASIDE PRODUCTION ALLOWANCES DISTRIBUTED PURSUANT TO 40 CFR 84.15(e)(4)—Continued

| Entity | Number of production allowances issued (MTEVe) |
| --- | --- |
| Iofina Chemical | 11.4 |
| Mexichem Fluor DBA Koura | 327,988.4 |

TABLE 4—SET-ASIDE CONSUMPTION ALLOWANCES DISTRIBUTED PURSUANT TO 40 CFR 84.15(e)(4)

| Entity | Number of consumption allowances issued (MTEVe) [1] |
| --- | --- |
| A-Gas | 5,926.5 |
| Advanced Specialty Gases | 526.9 |
| Air Liquide USA | 920.6 |
| Altair Partners | 5,390.0 |
| Arkema | 57,387.2 |
| Artsen | 1,897.6 |
| AutoZone Parts | 4,592.1 |
| AW Product Sales & Marketing | 359.2 |
| Bluon | 61.8 |
| Chemours | 61,647.9 |
| Combs Gas | 2,378.4 |
| ComStar International | 690.8 |
| Daikin America | 5,763.4 |
| Electronic Fluorocarbons | 192.6 |
| First Continental International | 1,421.7 |
| FluoroFusion Specialty Chemicals | 4,713.8 |
| GlaxoSmithKline | 990.5 |
| Harp USA | 1,413.8 |
| Honeywell International | 152,348.3 |
| Hudson Technologies | 5,518.1 |
| ICool USA | 6,291.7 |
| IGas Holdings | 47,912.0 |
| Iofina Chemical | 2.3 |
| Lenz Sales & Distribution | 2,050.4 |
| Linde | 983.4 |
| Mexichem Fluor DBA Koura | 47,053.8 |
| Mondy Global | 588.6 |
| National Refrigerants | 36,577.3 |
| Nature Gas Import and Export | 1,513.6 |
| Refrigerants, Inc | 49.0 |
| RMS of Georgia | 2,994.0 |
| Showa Chemicals of America | 135.7 |
| Solvay Fluorides | 2,035.9 |
| Technical Chemical | 1,798.9 |
| Transocean Offshore Deepwater Drilling | 0.0 |
| Tulstar Products | 1,355.7 |
| Walmart | 4,211.6 |
| Waysmos USA | 1,171.7 |
| Weitron | 11,705.0 |
| Wilhelmsen Ships Service | 74.6 |

[1] Numbers may not sum due to rounding.

This allocation of set-aside allowances should not be construed to limit the ability of EPA to apply administrative consequences under 40 CFR 84.35, or to limit the ability of the United States to exercise any authority to pursue enforcement action under the AIM Act and 40 CFR part 84, or under other federal laws or regulations.

For example, if future information reveals an entity provided false, inaccurate, or misleading information or did not disclose financial or familial relationships between a new entrant and another allowance holder, EPA may pursue administrative consequences and refer the entity for any and all appropriate enforcement actions.

On March 31, 2022, EPA also provided notice to three entities of the Agency's intent to take administrative consequences in accordance with 40 CFR 84.35 and retire an identified set of those companies' allowances. Using this authority, EPA can retire, revoke, or withhold the allocation of allowances, or ban a company from receiving, transferring, or conferring allowances.

**Judicial Review**

The AIM Act provides that certain sections of the Clean Air Act (CAA) "shall apply to" the AIM Act and "any rule, rulemaking, or regulation promulgated by the Administrator of [EPA] pursuant to [the AIM Act] as though [the AIM Act] were expressly included in title VI of [the CAA]." Id. § 7675(k)(1)(C). Among the applicable

sections of the CAA is section 307, id. § 7607, which includes provisions on judicial review. Section 307(b)(1) provides, in part, that petitions for review must be filed in the United States Court of Appeals for the District of Columbia Circuit: (i) When the agency action consists of ''nationally applicable regulations promulgated, or final actions taken, by the Administrator,'' or (ii) when such action is locally or regionally applicable, but ''such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.'' For locally or regionally applicable final actions, the CAA reserves to the EPA complete discretion whether to invoke the exception in (ii).

This final action is ''nationally applicable'' within the meaning of CAA section 307(b)(1). In the alternative, to the extent a court finds this final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that this action is based on a determination of ''nationwide scope or effect'' within the meaning of CAA section 307(b)(1).[2] This final action consisted of the Agency issuing hydrofluorocarbon allowances to applicants that met the applicable criteria from the set-aside pool and redistributing allowances remaining in the set-aside pool to entities that received general pool production and consumption allowances on October 1, 2021. The applicants and entities are located throughout the country in varying judicial circuits.[3] This final action is based on a common core of factual findings concerning the eligibility of applicants to the set-aside pool. For these reasons, this final action is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and hereby finds that this final action is based on a determination of nationwide scope or effect for purposes

of CAA section 307(b)(1) and is hereby publishing that finding in the **Federal Register**.

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the District of Columbia Circuit within 60 days from the date this final action is published in the **Federal Register**. Filing a petition for reconsideration by the Administrator of this final action does not affect the finality of the action for the purposes of judicial review, nor does it extend the time within which a petition for judicial review must be filed and shall not postpone the effectiveness of such rule or action.

**Hans Christopher Grundler,**

*Director, Office of Atmospheric Programs.*

[FR Doc. 2022–07152 Filed 4–4–22; 8:45 am]

**BILLING CODE 6560–50–P**

---

**FEDERAL RESERVE SYSTEM**

**Formations of, Acquisitions by, and Mergers of Bank Holding Companies**

The companies listed in this notice have applied to the Board for approval, pursuant to the Bank Holding Company Act of 1956 (12 U.S.C. 1841 *et seq.*) (BHC Act), Regulation Y (12 CFR part 225), and all other applicable statutes and regulations to become a bank holding company and/or to acquire the assets or the ownership of, control of, or the power to vote shares of a bank or bank holding company and all of the banks and nonbanking companies owned by the bank holding company, including the companies listed below.

The public portions of the applications listed below, as well as other related filings required by the Board, if any, are available for immediate inspection at the Federal Reserve Bank(s) indicated below and at the offices of the Board of Governors. This information may also be obtained on an expedited basis, upon request, by contacting the appropriate Federal Reserve Bank and from the Board's Freedom of Information Office at *https://www.federalreserve.gov/foia/request.htm.* Interested persons may express their views in writing on the standards enumerated in the BHC Act (12 U.S.C. 1842(c)).

Comments regarding each of these applications must be received at the Reserve Bank indicated or the offices of the Board of Governors, Ann E. Misback, Secretary of the Board, 20th Street and Constitution Avenue NW, Washington DC 20551–0001, not later than May 5, 2022.

*A. Federal Reserve Bank of Chicago* (Colette A. Fried, Assistant Vice President) 230 South LaSalle Street, Chicago, Illinois 60690–1414:

1. *Bank First Corporation, Manitowoc, Wisconsin;* to acquire Denmark Bancshares, Inc., and thereby indirectly acquire Denmark State Bank, both of Denmark, Wisconsin.

*A. Federal Reserve Bank of St. Louis* (Holly A. Rieser, Manager) P.O. Box 442, St. Louis, Missouri 63166–2034. Comments can also be sent electronically to *Comments.applications@stls.frb.org:*

1. *Omni Bank Group, Inc., Little Rock, Arkansas;* to become a bank holding company by acquiring Community State Bank, Bradley, Arkansas.

Board of Governors of the Federal Reserve System, March 31, 2022.

**Michele Taylor Fennell,**

*Deputy Associate Secretary of the Board.*

[FR Doc. 2022–07164 Filed 4–4–22; 8:45 am]

**BILLING CODE P**

---

**FEDERAL RESERVE SYSTEM**

**Agency Information Collection Activities: Announcement of Board Approval Under Delegated Authority and Submission to OMB**

**AGENCY:** Board of Governors of the Federal Reserve System.

**SUMMARY:** The Board of Governors of the Federal Reserve System (Board) is adopting a proposal to extend for three years, without revision, the Procurement Solicitation Package (FR 1400; OMB No. 7100–0180).

**FOR FURTHER INFORMATION CONTACT:**

Federal Reserve Board Clearance Officer—Nuha Elmaghrabi—Office of the Chief Data Officer, Board of Governors of the Federal Reserve System, Washington, DC 20551, (202) 452–3829.

Office of Management and Budget (OMB) Desk Officer for the Federal Reserve Board, Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 10235, 725 17th Street NW, Washington, DC 20503, or by fax to (202) 395–6974.

**SUPPLEMENTARY INFORMATION:** On June 15, 1984, OMB delegated to the Board authority under the Paperwork Reduction Act (PRA) to approve and assign OMB control numbers to collections of information conducted or sponsored by the Board. Board-approved collections of information are incorporated into the official OMB inventory of currently approved collections of information. The OMB

---

[2] In deciding whether to invoke the exception by making and publishing a finding that this final action is based on a determination of nationwide scope or effect, the Administrator has also taken into account a number of policy considerations, including his judgment balancing the benefit of obtaining the D.C. Circuit's authoritative centralized review versus allowing development of the issue in other contexts and the best use of Agency resources.

[3] In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the ''nationwide scope or effect'' exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

# **EXHIBIT E**

will not be included in the public docket and should not be submitted through *www.regulations.gov* or email. For additional information about the EPA's public docket visit the EPA Docket Center homepage at *http://www.epa.gov/dockets/*.

*Public Docket:* Publicly available docket materials may be accessed *Online* at *www.regulations.gov*.

**FOR FURTHER INFORMATION CONTACT:** The Designated Federal Officer (DFO), Tom Tracy, via phone/voicemail at: 919–541–4334; or via email at: *tracy.tom@epa.gov*.

Any member of the public interested in receiving a draft agenda, attending the meeting, or making a presentation at the meeting should contact Tom Tracy no later than October 23, 2022.

**SUPPLEMENTARY INFORMATION:** The Board of Scientific Counselors (BOSC) is a federal advisory committee that provides advice and recommendations to EPA's Office of Research and Development on technical and management issues of its research programs. The meeting agenda and materials will be posted to *https://www.epa.gov/bosc*.

Proposed agenda items for the meeting include, but are not limited to, the following: review of the New Chemicals Collaborative Research Program.

*Information on Services Available:* For information on translation services, access, or services for individuals with disabilities, please contact Tom Tracy at 919–541–4334 or *tracy.tom@epa.gov*. To request accommodation of a disability, please contact Tom Tracy at least ten days prior to the meeting to give the EPA adequate time to process your request.

*Authority:* Pub. L. 92–463, 1, Oct. 6, 1972, 86 Stat. 770.

**Mary Ross,**

*Director, Office of Science Advisor, Policy and Engagement.*

[FR Doc. 2022–22046 Filed 10–7–22; 8:45 am]

**BILLING CODE 6560–50–P**

## ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2021–0669; FRL–9116–03–OAR]

## Phasedown of Hydrofluorocarbons: Notice of 2023 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA) has issued calendar year 2023 allowances for the production and consumption of hydrofluorocarbons in accordance with the Agency's regulations as established in the 2021 final rule titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program under the American Innovation and Manufacturing Act.* The American Innovation and Manufacturing Act directs the Environmental Protection Agency by October 1 of each calendar year to determine the quantity of production and consumption allowances for the following calendar year. The Agency also provided notice to certain companies on September 30, 2022, that the Agency intends to retire an identified set of those companies' allowances in accordance with the administrative consequences provisions established in the final rule.

**FOR FURTHER INFORMATION CONTACT:** Andy Chang, U.S. Environmental Protection Agency, Stratospheric Protection Division, telephone number: 202–564–6658; email address: *chang.andy@epa.gov*. You may also visit EPA's website at *https://www.epa.gov/climate-hfcs-reduction* for further information.

**SUPPLEMENTARY INFORMATION:**

Subsection (e)(2)(D)(i) of the American Innovation and Manufacturing Act of 2020 (AIM Act) directs the Environmental Protection Agency (EPA) to determine, by October 1 of each calendar year, the quantity of allowances for the production and consumption of regulated substances that may be used for the following calendar year. EPA has codified the production and consumption baselines and phasedown schedules for regulated substances in 40 CFR 84.7. Under the phasedown schedule, for 2023, total production allowances may not exceed 344,299,157 metric tons of exchange value equivalent (MTEVe) and total consumption allowances may not exceed 273,498,315 MTEVe.

EPA regulations at 40 CFR part 84, subpart A, outline the process by which the Agency determines the number of allowances each entity is allocated. EPA allocated allowances consistent with this process for calendar year 2023, and has posted entity-specific allowance allocations on its website at *https://www.epa.gov/climate-hfcs-reduction*. An allowance allocated under the AIM Act does not constitute a property right and is a limited authorization for the production or consumption of a regulated substance.

EPA has codified the procedure for calculating application-specific allowance allocations in 40 CFR 84.13. These allowances are drawn from both the production and consumption allowance pools. EPA is issuing "application-specific allowances" to end users in five applications established by the AIM Act: propellants in metered dose inhalers, defense sprays, structural composite preformed polyurethane foam for marine use and trailer use, etching of semiconductor material or wafers and the cleaning of chemical vapor deposition chambers within the semiconductor manufacturing sector, and onboard aerospace fire suppression. Additionally, EPA is issuing "application-specific allowances" to the U.S. Department of Defense for mission-critical military end uses.

EPA has denied requests for application-specific allowances from Applied Materials, Inc; Benuvia Manufacturing; General Electric Global Research Center; Gilero LLC; Guardian Protective Devices, Inc.; nHalience LLC; and Shamrock Filling LLC because they are ineligible under 40 CFR 84.13. The requests were ineligible for at least one of the following reasons:

(1) Did not meet the criteria for HFC use in a covered application;

(2) Did not submit by the deadline;

(3) Did not provide proper supporting documentation or justification for their requests; or

(4) Did not report purchases of regulated substances in the past three years.

EPA has allocated 2023 application-specific allowances as shown in Table 1.

TABLE 1—APPLICATION-SPECIFIC ALLOWANCES FOR CALENDAR YEAR 2023

| Entity | Application | Number of application-specific allowances issued (MTEVe) [1] |
|---|---|---|
| Analog Devices | Semiconductors | 28,852.2 |
| Apple | Semiconductors | 1,033.8 |
| Armstrong Pharmaceuticals | Metered Dose Inhalers | 157,231.4 |
| ASML US | Semiconductors | 1,237.2 |
| AstraZeneca Pharmaceuticals | Metered Dose Inhalers | 4,652.7 |
| Aurobindo Pharma USA | Metered Dose Inhalers | 65,427.9 |
| Broadcom | Semiconductors | 834.7 |
| Compsys | Structural Composite Foam | 14,152.8 |
| Defense Technology | Defense Sprays | 9,366.7 |
| Diodes Incorporated | Semiconductors | 3,667.1 |
| GlobalFoundries | Semiconductors | 177,721.8 |
| Hitachi High-Tech America | Semiconductors | 1,064.4 |
| IBM Corporation | Semiconductors | 533.5 |
| Intel Corporation | Semiconductors | 746,212.5 |
| InvaGen Pharmaceuticals | Metered Dose Inhalers | 74,380.1 |
| Jireh Semiconductor | Semiconductors | 5,787.8 |
| Keysight Technologies | Semiconductors | 538.8 |
| Kindeva Drug Delivery | Metered Dose Inhalers | 408,952.0 |
| Lupin | Metered Dose Inhalers | 24,098.0 |
| Medtronic | Semiconductors | 637.6 |
| Microchip Technology | Semiconductors | 31,266.7 |
| Micron Technology | Semiconductors | 42,600.7 |
| Newport Fab DBA TowerJazz | Semiconductors | 8,042.3 |
| NXP Semiconductors | Semiconductors | 86,878.8 |
| Odin Pharmaceuticals | Metered Dose Inhalers | 1,708.5 |
| Polar Semiconductor | Semiconductors | 13,446.4 |
| Proteng Distribution | Onboard Aerospace Fire Suppression | 4,060.4 |
| Qorvo Texas | Semiconductors | 1,237.2 |
| Raytheon Technologies | Onboard Aerospace Fire Suppression | 952.6 |
| Renesas Electronics America | Semiconductors | 4,445.5 |
| Samsung Austin Semiconductor | Semiconductors | 384,969.7 |
| Security Equipment Corporation | Defense Sprays | 63,889.9 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 38,821.5 |
| SkyWater Technology | Semiconductors | 17,549.8 |
| Skyworks Solutions | Semiconductors | 4,652.3 |
| Texas Instruments | Semiconductors | 194,744.9 |
| The Research Foundation for The State University of New York. | Semiconductors | 159.9 |
| Tokyo Electron America | Semiconductors | 558.8 |
| Tower Semiconductor San Antonio | Semiconductors | 4,948.7 |
| TSMC Arizona Corporation | Semiconductors | 32,632.0 |
| UDAP Industries | Defense Sprays | 110,727.8 |
| Wabash National Corporation | Structural Composite Foam | 73,543.0 |
| WaferTech | Semiconductors | 22,355.4 |
| Wolfspeed | Semiconductors | 36,114.7 |
| X–FAB Texas | Semiconductors | 5,076.0 |
| Zarc International | Defense Sprays | 1,384.1 |
| Department of Defense | Mission-critical Military End Uses | 2,513,169.3 |
| Total | All | 5,426,319.9 |

[1] Numbers may not sum due to rounding.

EPA has codified the procedure for calculating the production allowance allocation in 40 CFR 84.9. EPA has allocated calendar year 2023 production allowances as shown in Table 2.

TABLE 2—PRODUCTION ALLOWANCES FOR CALENDAR YEAR 2023

| Entity | Number of production allowances issued (MTEVe)[1] |
|---|---|
| Application-specific allowances[2] | 5,426,319.9 |
| Arkema | 40,873,469.3 |
| Chemour | 75,703,417.3 |
| Honeywell International | 171,747,616.1 |
| Iofina Chemical | 1,758.6 |
| Mexichem Fluor DBA Koura | 50,546,575.8 |
| Total | 344,299,157.0 |

[1] Numbers may not sum due to rounding.
[2] See Table 1.

EPA has codified the procedure for calculating the consumption allowance allocation in 40 CFR 84.11. Calendar year 2023 consumption allowances have also been allocated to new market entrants consistent with 40 CFR 84.15.[1] EPA has allocated calendar year 2023 consumption allowances as shown in Table 3.

TABLE 3—CONSUMPTION ALLOWANCES FOR CALENDAR YEAR 2023

| Entity | Number of consumption allowances issued (MTEVe)[1] |
|---|---|
| Application-specific allowances[2] | 5,426,319.9 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) * | 200,000.0 |
| Ability Refrigerants * | 200,000.0 |
| ACT Commodities * | 77.8 |
| Advance Auto Parts * | 190,699.1 |
| Advanced Specialty Gases | 285,314.5 |
| AFK & Co. * | 193,335.9 |
| AFS Cooling * | 200,000.0 |
| A-Gas | 3,209,232.5 |
| Air Liquide USA | 498,530.3 |
| AllCool Refrigerant Reclaim * | 200,000.0 |
| Altair Partners | 2,918,730.4 |
| American Air Components * | 200,000.0 |
| Arkema | 31,075,488.7 |
| Artsen | 1,027,571.2 |
| Automart Distributors DBA Refrigerant Plus * | 200,000.0 |
| AutoZone Parts | 2,486,664.3 |
| AW Product Sales & Marketing | 194,505.7 |
| Bluon | 33,459.8 |
| CC Packaging * | 194,000.0 |
| Certified Refrigerant Services * | 200,000.0 |
| Chemours | 33,382,686.1 |
| Chemp Technology * | 200,000.0 |
| Combs Gas | 1,287,918.3 |
| ComStar International | 374,063.9 |
| Creative Solution * | 200,000.0 |
| Cross World Group * | 200,000.0 |
| Daikin America | 3,120,932.2 |
| EDX Industry * | 200,000.0 |
| Electronic Fluorocarbons | 104,289.0 |
| Fireside Holdings DBA American Refrigerants * | 199,978.5 |
| First Continental International | 769,838.0 |
| FluoroFusion Specialty Chemicals | 2,552,532.6 |
| Freskoa USA * | 200,000.0 |
| GlaxoSmithKline | 536,367.9 |
| Golden Refrigerant * | 200,000.0 |
| Harp USA | 765,574.0 |
| Honeywell International | 82,497,424.7 |
| Hudson Technologies | 2,988,057.5 |
| Hungry Bear * | 200,000.0 |
| ICool USA | 3,406,995.9 |
| IGas Holdings | 25,944,614.3 |
| Iofina Chemical | 1,264.9 |
| Kidde-Fenwal * | 200,000.0 |
| Lenz Sales & Distribution | 1,110,319.3 |
| Lina Trade * | 200,000.0 |
| Linde | 532,503.3 |
| Meraki Group * | 200,000.0 |
| Metalcraft * | 161,000.0 |
| Mexichem Fluor DBA Koura | 25,479,884.3 |

[1] A comprehensive overview and discussion of allocation decisions to new market entrants can be found in the Agency's April 5, 2022, notice *Phasedown of Hydrofluorocarbons: Notice of 2022 Set-Aside Pool Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020* [87 FR 19683].

TABLE 3—CONSUMPTION ALLOWANCES FOR CALENDAR YEAR 2023—Continued

| Entity | Number of consumption allowances issued (MTEVe)[1] |
|---|---|
| Mondy Global | 318,706.9 |
| National Refrigerants | 19,806,810.9 |
| Nature Gas Import and Export | 819,624.4 |
| North American Refrigerants * | 200,000.0 |
| O23 Energy Plus * | 200,000.0 |
| Perfect Score Too DBA Perfect Cycle* | 37,876.0 |
| Reclamation Technologies * | 200,000.0 |
| Refrigerants, Inc. | 26,550.9 |
| RMS of Georgia | 1,621,276.8 |
| RTR Suppliers * | 198,000.0 |
| Saalok * | 200,000.0 |
| Sciarra Laboratories * | 8,700.0 |
| SDS Refrigerant Services * | 200,000.0 |
| Showa Chemicals of America | 73,466.6 |
| Solvay Fluorides | 1,102,459.2 |
| Summit Refrigerants * | 200,000.0 |
| SynAgile Corporation * | 1,125.1 |
| Technical Chemical | 974,140.0 |
| TradeQuim * | 200,000.0 |
| Transocean Offshore Deepwater Drilling | 16.8 |
| Tulstar Products | 734,110.9 |
| Tyco Fire Products * | 200,000.0 |
| USA United Suppliers of America DBA USA Refrigerants * | 200,000.0 |
| USSC Acquisition Corp * | 131,451.0 |
| Walmart | 2,280,583.0 |
| Waysmos USA | 634,504.6 |
| Weitron | 6,338,344.6 |
| Wesco HMB * | 200,000.0 |
| Wilhelmsen Ships Service | 40,392.5 |
| Total | 273,498,315.0 |

[1] Numbers may not sum due to rounding.
[2] See Table 1.
* These entities were issued consumption allowances consistent with the provisions in 40 CFR 84.15(e)(3). Consistent with 40 CFR 84.15(e)(3) and as clarified in the Agency's 2021 final rule, these entities were issued the same number of allowances for 2023 as they were in 2022. In accordance with 40 CFR 84.15(f)(1), allowances allocated to these entities may not be transferred.

On September 30, 2022, EPA also provided notice to four entities of the Agency's intent to take administrative consequences in accordance with 40 CFR 84.35. Using this authority, EPA can retire, revoke, or withhold the allocation of allowances, or ban a company from receiving, transferring, or conferring allowances.[2] EPA provided notice of its intent to retire an identified set of each of the four companies' allowances, affecting both calendar year 2022 and calendar year 2023 allowances.

**Judicial Review**

The AIM Act provides that certain sections of the Clean Air Act (CAA) "shall apply to" the AIM Act and actions "promulgated by the Administrator of [EPA] pursuant to [the AIM Act] as though [the AIM Act] were expressly included in title VI of [the CAA]." 42 U.S.C. 7675(k)(1)(C). Among the applicable sections of the CAA is section 307, which includes provisions on judicial review. Section 307(b)(1) provides, in part, that petitions for review must only be filed in the United States Court of Appeals for the District of Columbia Circuit: (i) when the agency action consists of "nationally applicable regulations promulgated, or final actions taken, by the Administrator," or (ii) when such action is locally or regionally applicable, but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." For locally or regionally applicable final actions, the CAA reserves to the EPA complete discretion whether to invoke the exception in (ii).

The final action herein noticed is "nationally applicable" within the meaning of CAA section 307(b)(1). The AIM Act imposes a national cap on the total number of allowances available for each year for all entities nationwide. 42 U.S.C. 7675(e)(2)(B)–(D). For 2023, there was a national pool of 344,299,157 production allowances and 273,498,315 consumption allowances available to distribute. The action noticed herein distributed that finite set of allowances consistent with the methodology EPA established in the nationally applicable framework rule. As such, the allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations. Each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affects the allocations to others.

In the alternative, to the extent a court finds the final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that the action is based on a determination of

[2] Administrative consequences that the Agency has finalized can be found here: *https://www.epa.gov/climate-hfcs-reduction/administrative-consequences-under-hfc-allocation-rule.*

"nationwide scope or effect" within the meaning of CAA section 307(b)(1).[3] In deciding to invoke this exception, the Administrator has taken into account a number of policy considerations, including his judgment regarding the benefit of obtaining the D.C. Circuit's authoritative centralized review, rather than allowing development of the issue in other contexts, in order to ensure consistency in the Agency's approach to allocation of allowances in accordance with EPA's national regulations in 40 CFR part 84. The final action treats all affected entities consistently in how the Part 84 regulations are applied. The allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations, and each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affect the allocations to others. The Administrator finds that this is a matter on which national uniformity is desirable to take advantage of the D.C. Circuit's administrative law expertise and facilitate the orderly development of the basic law under the AIM Act and EPA's implementing regulations. The Administrator also finds that consolidated review of the action in the D.C. Circuit will avoid piecemeal litigation in the regional circuits, further judicial economy, and eliminate the risk of inconsistent results for different regulated entities. The Administrator also finds that a nationally consistent approach to the allocation of allowances constitutes the best use of agency resources. The Administrator is publishing his finding that the action is based on a determination of nationwide scope or effect in the **Federal Register** as part of this notice in addition to inclusion on the website announcing allocations.

For these reasons, the final action of the Agency allocating hydrofluorocarbon allowances to entities located throughout the country is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and finds that the final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is hereby

---

[3] In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the "nationwide scope or effect" exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

publishing that finding in the **Federal Register**.

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the District of Columbia Circuit by December 12, 2022.

**Hans Christopher Grundler,**

*Director, Office of Atmospheric Programs.*

[FR Doc. 2022–22059 Filed 10–7–22; 8:45 am]

**BILLING CODE 6560–50–P**

---

# FEDERAL COMMUNICATIONS COMMISSION

**[OMB 3060–0863; FR ID 108097]**

## Information Collection Being Reviewed by the Federal Communications Commission

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, and as required by the Paperwork Reduction Act of 1995 (PRA), the Federal Communications Commission (FCC or Commission) invites the general public and other Federal agencies to take this opportunity to comment on the following information collection. Comments are requested concerning: whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; the accuracy of the Commission's burden estimate; ways to enhance the quality, utility, and clarity of the information collected; ways to minimize the burden of the collection of information on the respondents, including the use of automated collection techniques or other forms of information technology; and ways to further reduce the information collection burden on small business concerns with fewer than 25 employees. The FCC may not conduct or sponsor a collection of information unless it displays a currently valid Office of Management and Budget (OMB) control number. No person shall be subject to any penalty for failing to comply with a collection of information subject to the PRA that does not display a valid OMB control number.

**DATES:** Written PRA comments should be submitted on or before December 12, 2022. If you anticipate that you will be submitting comments but find it difficult to do so within the period of time allowed by this notice, you should

advise the contact listed below as soon as possible.

**ADDRESSES:** Direct all PRA comments to Cathy Williams, FCC, via email to *PRA@ fcc.gov* and to *Cathy.Williams@fcc.gov.*

**FOR FURTHER INFORMATION CONTACT:** For additional information about the information collection, contact Cathy Williams at (202) 418–2918.

**SUPPLEMENTARY INFORMATION:**

*OMB Control Number:* 3060–0863.

*Title:* Satellite Delivery of Network Signals to Unserved Households for Purposes of the Satellite Home Viewer Act.

*Form Number:* Not applicable.

*Type of Review:* Extension of a currently approved collection.

*Respondents:* Business or other for-profit entities.

*Number of Respondents and Responses:* 848 respondents; 250,000 responses.

*Estimated Time per Response:* 0.50 hours.

*Frequency of Response:* Recordkeeping requirement, On occasion reporting requirement.

*Obligation to Respond:* Required to obtain or retain benefits. Statutory authority for this information collection action is contained in 47 U.S.C. 339.

*Total Annual Burden to Respondents:* 125,000 hours.

*Total Annual Cost:* No cost.

*Needs and Uses:* The information collection requirements contained in 47 CFR 73.686 describes a method for measuring signal strength at a household so that the satellite and broadcast industries would have a uniform method for making an actual determination of the signal strength that a household received. The information gathered as part of the noise-limited service contour signal strength tests will be used to indicate whether a household is "unserved" by over-the-air network signals.

Satellite and broadcast industries making field strength measurements for formal submission to the Commission in rulemaking proceedings, or making such measurements upon the request of the Commission, shall follow the procedure for making and reporting such measurements which shall be included in a report to the Commission and submitted in affidavit form, in triplicate. The report shall contain the following information:

(a) Tables of field strength measurements, which for each measuring location; (b) U.S. Geological Survey topographic maps; (c) All information necessary to determine the pertinent characteristics of the transmitting installation; (d) A list of

# EXHIBIT F

eFiling is encouraged. More detailed information relating to filing requirements, interventions, protests, service, and qualifying facilities filings can be found at: *http://www.ferc.gov/ docs-filing/efiling/filing-req.pdf.* For other information, call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

The Commission's Office of Public Participation (OPP) supports meaningful public engagement and participation in Commission proceedings. OPP can help members of the public, including landowners, environmental justice communities, Tribal members and others, access publicly available information and navigate Commission processes. For public inquiries and assistance with making filings such as interventions, comments, or requests for rehearing, the public is encouraged to contact OPP at (202) 502–6595 or *OPP@ ferc.gov.*

Dated: October 13, 2023.

**Debbie-Anne A. Reese,**
*Deputy Secretary.*

[FR Doc. 2023–23093 Filed 10–18–23; 8:45 am]

**BILLING CODE 6717–01–P**

## ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2021–0669; FRL–9116–04– OAR]

### Phasedown of Hydrofluorocarbons: Notice of 2024 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Administrative Consequences

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA) has issued calendar year 2024 allowances for the production and consumption of hydrofluorocarbons in accordance with the Agency's regulations. This issuance of allowances is undertaken pursuant to the American Innovation and Manufacturing Act, which directs the Environmental Protection Agency by October 1 of each calendar year to determine the quantity of production and consumption allowances for the following calendar year. In this notice, the Agency is also providing notice of separate Agency actions finalizing administrative consequences for certain entities. These

administrative consequences were applied to withhold, retire, and revoke entities' remaining calendar year 2023 and newly issued calendar year 2024 allowances in accordance with the administrative consequence regulatory provisions.

**FOR FURTHER INFORMATION CONTACT:** Andy Chang, U.S. Environmental Protection Agency, Stratospheric Protection Division, telephone number: 202–564–6658; email address: *chang.andy@epa.gov.* You may also visit EPA's website at *https://www.epa.gov/ climate-hfcs-reduction* for further information.

**SUPPLEMENTARY INFORMATION:** Subsection (e)(2)(D)(i) of the American Innovation and Manufacturing Act of 2020 (AIM Act) directs the Environmental Protection Agency (EPA) to determine, by October 1 of each calendar year, the quantity of allowances for the production and consumption of regulated substances that may be used for the following calendar year. EPA has codified the production and consumption baselines and phasedown schedules for regulated substances in 40 CFR 84.7. Under the phasedown schedule, for 2024, total production allowances may not exceed 229,521,263 metric tons of exchange value equivalent (MTEVe) and total consumption allowances may not exceed 181,522,990 MTEVe.

EPA regulations at 40 CFR part 84, subpart A, outline the process by which the Agency determines the number of allowances each entity is allocated. EPA allocated allowances consistent with this process for calendar year 2024, and has posted entity-specific allowance allocations on its website at *https:// www.epa.gov/climate-hfcs-reduction.* An allowance allocated under the AIM Act does not constitute a property right and is a limited authorization for the production or consumption of a regulated substance.

Note that while allowances may be transferred or conferred once they are allocated, they can only be expended to cover imports and production in the calendar year for which they are allocated. In other words, calendar year 2024 allowances may only be expended for production and import of bulk HFCs between January 1, 2024, and December 31, 2024.

### Application-Specific Allowances

EPA established the methodology for issuing application-specific allowances

in the 2021 final rule titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program Under the American Innovation and Manufacturing Act* (86 FR 55116) and codified the methodology for issuing allowance allocations in 40 CFR 84.13. Because application-specific allowances can be expended to either produce or import HFCs, and application-specific allowances must be provided from within the overall annual production and consumption caps, EPA subtracts the amount of application-specific allowances allocated from both the production and consumption general allowance pools. EPA issues application-specific allowances to end users in five applications established by the AIM Act: propellants in metered dose inhalers (MDIs), defense sprays, structural composite preformed polyurethane foam for marine use and trailer use, etching of semiconductor material or wafers and the cleaning of chemical vapor deposition chambers within the semiconductor manufacturing sector, and onboard aerospace fire suppression. Additionally, EPA issues application-specific allowances to the U.S. Department of Defense for mission-critical military end uses.

EPA's 2023 final rule titled *Phasedown of Hydrofluorocarbons: Allowance Allocation Methodology for 2024 and Later Years* (88 FR 46836), updated the methodology for how the Agency would issue production and consumption allowances for 2024 through 2028. These updates are codified in 40 CFR 84.9 (production) and 40 CFR 84.11 (consumption), and EPA is issuing allowances to entities who meet the criteria in the regulations, including those who were previously issued consumption allowances as new market entrants pursuant to 40 CFR 84.15.

EPA's final calculations for allocation of allowances for each entity on September 29, 2023, follows below. EPA followed the methodology from the applicable regulations in determining allocations, *i.e.,* 40 CFR 84.13 for application-specific allowances, 40 CFR 84.9 for production allowances, and 40 CFR 84.11 for consumption allowances.

Applying the methodology codified in 40 CFR 84.13, EPA allocated the number of application-specific allowances shown in Table 1.

TABLE 1—NUMBER OF CALENDAR YEAR 2024 APPLICATION-SPECIFIC ALLOWANCES ALLOCATED PER ENTITY

| Entity | Application | Application-specific allowances (MTEVe) allocated |
|---|---|---|
| Analog devices | Semiconductors | 18,130.0 |
| Applied Materials | Semiconductors | 10,666.7 |
| Armstrong Pharmaceuticals | Propellants in MDIs | 230,001.2 |
| ASML US | Semiconductors | 1,033.8 |
| AstraZeneca Pharmaceuticals | Propellants in MDIs | 3,848.9 |
| Aurobindo Pharma USA | Propellants in MDIs | 28,316.9 |
| Broadcom | Semiconductors | 213.1 |
| Compsys | Structural Composite Preformed Polyurethane Foam | 19,928.6 |
| Defense Technology | Defense Sprays | 1,537.4 |
| Diodes Incorporated | Semiconductors | 2,584.5 |
| General Electric | Semiconductors | 73.9 |
| GlaxoSmithKline | Propellants in MDIs | 523,906.9 |
| GlobalFoundries | Semiconductors | 152,916.2 |
| Guardian Protective Devices | Defense Sprays | 7,467.0 |
| Hitachi High-Tech America | Semiconductors | 537.9 |
| IBM Corporation | Semiconductors | 369.4 |
| Intel Corporation | Semiconductors | 597,502.0 |
| Invagen Pharmaceuticals | Propellants in MDIs | 156,427.2 |
| Jireh Semiconductor | Semiconductors | 1,600.2 |
| Keysight Technologies | Semiconductors | 537.7 |
| Kindeva Drug Delivery | Propellants in MDIs | 335,693.4 |
| LA Semiconductor | Semiconductors | 2,584.5 |
| Lam Research Corp | Semiconductors | 182,210.4 |
| Lupin | Propellants in MDIs | 21,415.7 |
| Medtronic Tempe Campus | Semiconductors | 457.1 |
| Microchip Technology | Semiconductors | 43,757.2 |
| Micron Technology | Semiconductors | 40,557.8 |
| Newport Fab DBA TowerJazz | Semiconductors | 6,414.4 |
| Northrop Grumman Corporation | Semiconductors | 2,116.0 |
| NXP Semiconductor | Semiconductors | 72,169.2 |
| Odin Pharmaceuticals | Propellants in MDIs | 1,075.7 |
| Polar Semiconductor | Semiconductors | 11,718.5 |
| Proteng Distribution | Onboard Aerospace Fire Suppression | 6,723.4 |
| Qorvo Texas | Semiconductors | 1,065.3 |
| Raytheon Technologies | Onboard Aerospace Fire Suppression | 1,535.4 |
| Renesas Electronics America | Semiconductors | 1,065.3 |
| Samsung Austin Semiconductor | Semiconductors | 334,439.8 |
| Security Equipment Corporation | Defense Sprays | 53,652.3 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 19,001.0 |
| SkyWater Technology | Semiconductors | 18,718.8 |
| Skyworks Solutions | Semiconductors | 536.8 |
| Taiwan Semiconductor Manufacturing Company Arizona Corporation (TSMC Arizona Corporation). | Semiconductors | 34,250.1 |
| Texas Instruments | Semiconductors | 193,836.7 |
| The Research Foundation for The State University of New York OBO SUNY Polytechnic Institute. | Semiconductors | 1,034.4 |
| Tokyo Electron America | Semiconductors | 558.8 |
| Tower Semiconductor San Antonio | Semiconductors | 8,502.2 |
| UDAP Industries | Defense Sprays | 37,629.1 |
| Wabash National Corporation | Structural Composite Preformed Polyurethane Foam | 66,340.0 |
| WaferTech | Semiconductors | 18,103.3 |
| Wolfspeed | Semiconductors | 48,648.1 |
| X–FAB Texas | Semiconductors | 2,432.6 |
| Department of Defense | Mission-critical Military End Uses | 2,511,081.5 |
| Total Issued | All | 5,836,924.3 |

EPA has denied requests for application-specific allowances from Apple Inc. and Zarc International, Inc. because they are ineligible under 40 CFR 84.13. The requests were ineligible for at least one of the following reasons:

(1) Did not report purchases of regulated substances in the past three years; or

(2) Failed to submit a request by the deadline.

**General Pool Allowances for Production**

Applying the methodology codified in 40 CFR 84.9, EPA allocated the number of production allowances shown in Table 2.

TABLE 2—NUMBER OF CALENDAR YEAR 2024 PRODUCTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Production allowances allocated (MTEVe) |
|---|---|
| Application-specific allowances | [a] 5,836,924.3 |
| Arkema | 26,990,669.0 |
| Chemours | 50,038,369.2 |
| Honeywell International | 113,275,864.9 |
| Iofina Chemical | 1,160.9 |
| Mexichem Fluor DBA Koura | 33,378,274.7 |
| Total Issued | 229,521,263.0 |

[a] See Table 1; this value corresponds to the total number of application-specific allowances allocated.

**General Pool Allowances for Consumption**

Applying the methodology codified in 40 CFR 84.11, EPA allocated the number of consumption allowances shown in Table 3.

TABLE 3—NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Consumption allowances allocated (MTEVe) |
|---|---|
| Application-specific allowances | [a] 5,836,924.3 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 128,987.8 |
| Ability Refrigerants | 128,987.8 |
| ACT Commodities | 50.4 |
| Advance Auto Parts | 461,215.3 |
| Advanced Specialty Gases | 184,102.8 |
| AFK & Co | 124,689.8 |
| AFS Cooling | 128,987.8 |
| A-Gas | 2,199,784.7 |
| Air Liquide USA | 321,682.9 |
| AllCool Refrigerant Reclaim | 128,987.8 |
| American Air Components | 128,987.8 |
| Arkema | 20,051,844.9 |
| Artsen | 663,053.3 |
| Automart Distributors DBA Refrigerant Plus | 128,987.8 |
| AutoZone Parts | 1,304,000.7 |
| AW Product Sales & Marketing | 77,991.8 |
| Bluon | 21,590.6 |
| CC Packaging | 125,118.2 |
| Chemours | 22,115,332.4 |
| Chemp Technology | 128,987.8 |
| ChemPenn | 14,336.2 |
| ComStar International | 232,510.8 |
| Creative Solution | 128,987.8 |
| Cross World Group | 128,987.8 |
| Daikin America | 2,013,820.3 |
| EDX Industry | 370,884.7 |
| Electronic Fluorocarbons | 67,293.9 |
| Fireside Holdings DBA American Refrigerants | 128,973.9 |
| First Continental International | 496,747.8 |
| FluoroFusion Specialty Chemicals | 1,647,053.3 |
| Freskoa USA | 128,987.8 |
| GlaxoSmithKline | 347,339.2 |
| Golden Refrigerant | 128,987.8 |
| Harp USA | 493,996.4 |
| Honeywell International | 53,136,510.9 |
| Hudson Technologies | 1,928,081.5 |
| Hungry Bear | 128,987.8 |
| ICool USA | 2,198,406.6 |
| IGas Holdings | 16,846,810.7 |
| Iofina Chemical | 817.1 |
| Kidde-Fenwal | 128,987.8 |
| Lenz Sales & Distribution | 716,447.4 |
| Lina Trade | 128,987.8 |
| Linde | 343,607.9 |
| Matheson Tri-Gas | 22,015.7 |

Table 3—Number of Calendar Year 2024 Consumption Allowances Allocated per Entity—Continued

| Entity | Consumption allowances allocated (MTEVe) |
| --- | --- |
| MEK Chemical Corporation | 53,572.5 |
| Meraki Group | 128,987.8 |
| Metalcraft | 103,835.2 |
| Mexichem Fluor DBA Koura | 16,441,211.7 |
| Mondy Global | 205,649.7 |
| National Refrigerants | 12,780,590.6 |
| Nature Gas Import and Export | 528,873.0 |
| North American Refrigerants | 128,987.8 |
| O23 Energy Plus | 128,987.8 |
| Perfect Score Too DBA Perfect Cycle | 24,427.9 |
| Reclamation Technologies | 256,685.4 |
| Resonac America (formerly Showa Chemicals of America) | 42,851.2 |
| RGAS (formerly listed as Combs Gas) | 2,951,990.2 |
| RMS of Georgia | 1,063,455.0 |
| Sciarra Laboratories | 5,604.6 |
| SDS Refrigerant Services | 128,987.8 |
| Solvay Fluorides | 711,375.5 |
| Summit Refrigerants | 128,987.8 |
| SynAgile Corporation | 725.8 |
| Technical Chemical | 2,203,622.1 |
| TradeQuim | 128,987.8 |
| Transocean Offshore Deepwater Drilling | 11.0 |
| Tulstar Products | 473,694.4 |
| Tyco Fire Products | 128,987.8 |
| USA United Suppliers of America DBA USA Refrigerants | 273,401.8 |
| USSC Acquisition Corp | 84,777.8 |
| Walmart | 1,471,574.6 |
| Waysmos USA | 361,839.8 |
| Wego Chemical Group | 36,492.6 |
| Weitron | 4,089,895.7 |
| Wesco HMB | 128,987.8 |
| Wilhelmsen Ships Service | 26,063.9 |
| Total Issued | 181,522,990.0 |

a See Table 1; this value corresponds to the total number of application-specific allowances allocated.

## Administrative Consequences

Separate from the allocation of calendar year 2024 allowances, EPA also took administrative consequences against certain entities. Each administrative consequence is an independent stand-alone action, but for administrative efficiency EPA is providing notice of these independent actions through this notice as well. The requirements surrounding administrative consequences are codified in 40 CFR 84.35. Using this authority, EPA can retire, revoke, or withhold the allocation of allowances, or ban an entity from receiving, transferring, or conferring allowances. A retired allowance is one that must go unused and expire at the end of the year; a revoked allowance is one that EPA takes back from an allowance holder and redistributes to all the other allowance holders; and a withheld allowance is one that is retained by the Agency until an allowance holder that has failed to meet a regulatory requirement comes back into compliance, at which point EPA

allocates it to the allowance holder. A withheld allowance could become a revoked allowance if the allowance holder fails to meet the regulatory requirement at issue within the timeframe specified by EPA.[1] More information on EPA's approach to administrative consequences can be found at 86 FR 55168.

EPA finalized administrative consequences for certain entities that were allocated consumption allowances, listed in Table 3 for calendar year 2024, effective concurrently with the issuance of calendar year 2024 allowances. Specifically, the following entities failed to submit complete HFC reports as required in 40 CFR 84.31 and therefore EPA has withheld a portion of their consumption allowances until the missing reports are filed and verified by EPA: Air Liquide USA; Creative Solution; and Matheson Tri-gas, Inc.

The following entities imported regulated HFCs without expending the requisite number of consumption allowances at the time of import and therefore EPA has retired and/or revoked consumption allowances commensurate with the quantities of regulated substances imported without allowances: American Air Components; AFK & Co.; Artsen; Bluon, Inc.; Electronic Fluorocarbons; Fluorofusion Specialty Chemicals; and Resonac America, Inc. Lastly, Honeywell International produced and imported regulated substances without expending the requisite number of consumption allowances at the time of production or import.

In some of these cases, EPA finalized administrative consequences that totaled more than was allocated to an entity. For example, American Air Components, Bluon, Inc., and Resonac America, Inc. imported regulated HFCs without the necessary allowances at the time of import in such quantities that exceed their initial allocation of calendar year 2024 allowances. With

---

[1] Administrative consequences that the Agency has finalized can be found here: *https://www.epa.gov/climate-hfcs-reduction/administrative-consequences-under-hfc-allocation-rule.*

respect to one entity, the Agency decided to apply the administrative consequence across multiple years. EPA made this determination given the size of the administrative consequence and as a result of considerations related to the step reduction in 2024 and implications for the market as a whole regarding access to chemicals that are anticipated to be impacted by EPA HFC regulations. A summary of these administrative consequences is included in Table 4.

TABLE 4—SUMMARY OF ADMINISTRATIVE CONSEQUENCES EFFECTIVE ON SEPTEMBER 29, 2023, PURSUANT TO 40 CFR 84.35

| Entity | Number of affected allowances (MTEVe) | Applicable year(s) | Administrative consequence action | Reasoning |
|---|---|---|---|---|
| American Air Components ................. | 208,516.5 | 2024 and future years as needed ..... | Retire ................ | Imported regulated HFCs without expending requisite number of allowances; Will retire and revoke allowances until the full administrative consequence is covered. |
| | a 104,258.3 | 2025 and future years as needed ..... | Revoke. | |
| AFK & Co ........................................... | 5,701.9 | 2024 ....................................................... | Retire ................ | Imported regulated HFCs without expending requisite number of allowances. |
| | a 2,851.0 | 2024 ....................................................... | Revoke. | |
| Artsen ................................................ | 346.7 | 2024 ....................................................... | Retire ................ | Imported regulated HFCs without expending requisite number of allowances. |
| | a 173.4 | 2024 ....................................................... | Revoke. | |
| Bluon ................................................. | 575,800.7 | 2024 and future years as needed ..... | Retire ................ | Imported regulated HFCs without expending requisite number of allowances; Will retire and revoke allowances until the full administrative consequence is covered. |
| | a 288,855.8 | As early as 2025 and future years as needed. | Revoke. | |
| Electronic Fluorocarbons ................... | 64,931.9 | 2023 ....................................................... | Retire ................ | Imported regulated HFCs without expending requisite number of allowances. |
| | a 32,466.0 | 2024 ....................................................... | Revoke. | |
| Fluorofusion Specialty Chemicals ....... | a 5,505.2 | 2024 ....................................................... | Revoke ............. | Imported regulated HFCs without expending requisite number of allowances. |
| Resonac America ............................... | 200,070.5 | 2024 and future years as needed ..... | Retire ................ | Imported regulated HFCs without expending requisite number of allowances; Will retire and revoke allowances until the full administrative consequence is covered. |
| | a 100,035.3 | As early as 2025 and future years as needed. | Revoke. | |
| Honeywell International ...................... | a 231,334.0 | 2024 ....................................................... | Revoke ............. | Produced and imported HFCs without expending requisite number of allowances;b Will spread the administrative consequence over five years. |
| | a 462,668.1 | 2025 ....................................................... | Revoke. | |
| | a 925,336.2 | 2026 ....................................................... | Revoke. | |
| | a 1,388,004.3 | 2027 ....................................................... | Revoke. | |
| | a 1,619,338.4 | 2028 ....................................................... | Revoke. | |
| Air Liquide USA ................................. | 64,336.6 | 2024 ....................................................... | Withhold ........... | Failure to submit complete HFC reports as required in 40 CFR 84.31. |
| Creative Solution ............................... | 25,797.6 | 2024 ....................................................... | Withhold ........... | Failure to submit complete HFC reports as required in 40 CFR 84.31. |
| Matheson Tri-Gas .............................. | 4,403.1 | 2024 ....................................................... | Withhold ........... | Failure to submit complete HFC reports as required in 40 CFR 84.31. |

a As stated in the HFC Allocation Framework Rule (86 FR 55116), EPA explained it would take a 50% premium in first instances of administrative consequences. These values correspond to 50% of the full amount of consumption without requisite allowances at the time of production and/or import.

b EPA only finalized administrative consequences for Honeywell International that affect the company's consumption allowances, since the company did not produce regulated substances in a quantity that exceeded the quantity of available production allowances that it had in its possession.

The allowance adjustments by way of withholding, retiring, and/or revoking a portion of entities' calendar year 2024 allowances effective September 29, 2023, are reflected below in Table 5.

TABLE 5—CALENDAR YEAR 2024 ALLOWANCES ADJUSTED THROUGH ADMINISTRATIVE CONSEQUENCES EFFECTIVE SEPTEMBER 29, 2023

| Entity | Number of withheld consumption allowances (MTEVe) | Number of retired consumption allowances (MTEVe) | Number of revoked consumption allowances (MTEVe) |
|---|---|---|---|
| Air Liquide USA ............................................................................................. | 64,336.6 | ................................ | ................................ |
| Creative Solution ........................................................................................... | 25,797.6 | ................................ | ................................ |
| Matheson Tri-Gas .......................................................................................... | 4,403.1 | ................................ | ................................ |
| Electronic Fluorocarbons ............................................................................... | ................................ | ................................ | 32,466.0 |
| Honeywell International .................................................................................. | ................................ | ................................ | 231,334.0 |
| AFK & Co ...................................................................................................... | ................................ | 5,701.9 | 2,851.0 |
| American Air Components .............................................................................. | ................................ | 128,987.8 | ................................ |
| Artsen ............................................................................................................ | ................................ | 346.7 | 173.4 |
| Bluon ............................................................................................................. | ................................ | 21,590.6 | ................................ |
| Fluorofusion Specialty Chemicals .................................................................. | ................................ | ................................ | 5,505.2 |
| Resonac America ........................................................................................... | ................................ | 42,851.2 | ................................ |

*Adjustments to Consumption Allowances*

EPA notes that entities in Table 4 who either imported or produced (or both) without expending the requisite number of consumption allowances at the time of production or import were not eligible to receive allowances that were redistributed as a result of allowances revoked for calendar year 2024. Further, an entity is not eligible to receive redistributed allowances if they were subject to administrative consequences that resulted in the revocation of allowances that contributed to the

overall total of allowances being redistributed at the time. For example, if EPA revoked 50 MTEVe allowances from company A and 50 MTEVe allowances from company B, effective on the same day, EPA's redistribution of that single pool of 100 MTEVe allowances would go to all general pool allowances holders except company A and company B. This applies regardless of whether the revocation happens in one year or over multiple years. However, entities who only had allowances withheld by the Agency as a result of failure to comply with certain HFC reporting requirements as

contained in 40 CFR 84.31 were eligible to receive allowances that were redistributed as a result of allowances revoked for calendar year 2024. For 2024, the total number of revoked and redistributed allowances is 272,329.6 MTEVe, which are being apportioned to eligible consumption allowance holders based on their relative market share, and the total number of retired allowances in 2024 is 199,478.2 MTEVe.

Table 6 reflects consumption allowance totals available to each entity as of September 29, 2023, after taking into account the administrative consequences shown in Table 5.

TABLE 6—TOTAL NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF SEPTEMBER 29, 2023, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES

| Entity | Available consumption allowances, adjusted for administrative consequences (MTEVe) |
| --- | --- |
| Application-specific allowances | [a] 5,836,924.3 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 129,280.9 |
| Ability Refrigerants | 129,280.9 |
| ACT Commodities | 50.5 |
| Advance Auto Parts | 462,263.3 |
| Advanced Specialty Gases | 184,521.1 |
| AFK & Co. | 116,136.9 |
| AFS Cooling | 129,280.9 |
| A-Gas | 2,204,783.0 |
| Air Liquide USA | 258,077.2 |
| AllCool Refrigerant Reclaim | 129,280.9 |
| American Air Components | 0.0 |
| Arkema | 20,097,406.2 |
| Artsen | 662,533.2 |
| Automart Distributors DBA Refrigerant Plus | 129,280.9 |
| AutoZone Parts | 1,306,963.6 |
| AW Product Sales & Marketing | 78,169.0 |
| Bluon | 0.0 |
| CC Packaging | 125,402.5 |
| Chemours | 22,165,582.4 |
| Chemp Technology | 129,280.9 |
| ChemPenn | 14,368.8 |
| ComStar International | 233,039.1 |
| Creative Solution | 103,483.3 |
| Cross World Group | 129,280.9 |
| Daikin America | 2,018,396.1 |
| EDX Industry | 371,727.4 |
| Electronic Fluorocarbons | 34,827.9 |
| Fireside Holdings DBA American Refrigerants | 129,266.9 |
| First Continental International | 497,876.5 |
| FluoroFusion Specialty Chemicals | 1,641,548.1 |
| Freskoa USA | 129,280.9 |
| GlaxoSmithKline | 348,128.4 |
| Golden Refrigerant | 129,280.9 |
| Harp USA | 495,118.8 |
| Honeywell International | 52,905,176.9 |
| Hudson Technologies | 1,932,462.4 |
| Hungry Bear | 129,280.9 |
| ICool USA | 2,203,401.8 |
| IGas Holdings | 16,885,089.6 |
| Iofina Chemical | 819.0 |
| Kidde-Fenwal | 129,280.9 |
| Lenz Sales & Distribution | 718,075.3 |
| Lina Trade | 129,280.9 |
| Linde | 344,388.6 |
| Matheson Tri-Gas | 17,662.6 |
| MEK Chemical Corporation | 53,694.2 |
| Meraki Group | 129,280.9 |

TABLE 6—TOTAL NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF SEPTEMBER 29, 2023, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES—Continued

| Entity | Available consumption allowances, adjusted for administrative consequences (MTEVe) |
| --- | --- |
| Metalcraft | 104,071.1 |
| Mexichem Fluor DBA Koura | 16,478,569.0 |
| Mondy Global | 206,117.0 |
| National Refrigerants | 12,809,630.4 |
| Nature Gas Import and Export | 530,074.7 |
| North American Refrigerants | 129,280.9 |
| O23 Energy Plus | 129,280.9 |
| Perfect Score Too DBA Perfect Cycle | 24,483.4 |
| Reclamation Technologies | 257,268.6 |
| Resonac America (formerly Showa Chemicals of America) | 0.0 |
| RGAS (formerly listed as Combs Gas) | 2,958,697.6 |
| RMS of Georgia | 1,065,871.4 |
| Sciarra Laboratories | 5,617.3 |
| SDS Refrigerant Services | 129,280.9 |
| Solvay Fluorides | 712,991.9 |
| Summit Refrigerants | 129,280.9 |
| SynAgile Corporation | 727.4 |
| Technical Chemical | 2,208,629.1 |
| TradeQuim | 129,280.9 |
| Transocean Offshore Deepwater Drilling | 11.0 |
| Tulstar Products | 474,770.7 |
| Tyco Fire Products | 129,280.9 |
| USA United Suppliers of America DBA USA Refrigerants | 274,023.0 |
| USSC Acquisition Corp | 84,970.4 |
| Walmart | 1,474,918.3 |
| Waysmos USA | 362,662.0 |
| Wego Chemical Group | 36,575.5 |
| Weitron | 4,099,188.7 |
| Wesco HMB | 129,280.9 |
| Wilhelmsen Ships Service | 26,123.1 |
| Total Available | 181,228,974.5 |

*Judicial Review*

The AIM Act provides that certain sections of the Clean Air Act (CAA) "shall apply to" the AIM Act and actions "promulgated by the Administrator of [EPA] pursuant to [the AIM Act] as though [the AIM Act] were expressly included in title VI of [the CAA]." 42 U.S.C. 7675(k)(1)(C). Among the applicable sections of the CAA is section 307, which includes provisions on judicial review. Section 307(b)(1) provides, in part, that petitions for review must only be filed in the United States Court of Appeals for the District of Columbia Circuit: (i) When the agency action consists of "nationally applicable regulations promulgated, or final actions taken, by the Administrator," or (ii) when such action is locally or regionally applicable, but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." For locally or regionally applicable final actions, the CAA

reserves to the EPA complete discretion whether to invoke the exception in (ii).

The issuance of calendar year 2024 allowances for the production and consumption of hydrofluorocarbons herein noticed is "nationally applicable" within the meaning of CAA section 307(b)(1). The AIM Act imposes a national cap on the total number of allowances available for each year for all entities nationwide. 42 U.S.C. 7675(e)(2)(B)–(D). For 2024, there was a national pool of 229,521,263 production allowances and 181,522,990 consumption allowances available to distribute. The allocation action noticed herein distributed that finite set of allowances consistent with the methodology EPA established in the nationally applicable framework rule. As such, the allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations. Each entity's allowance allocation is a relative share of that pool; thus, any

additional allowances awarded to one entity directly affects the allocations to others.

In the alternative, to the extent a court finds the final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that the allocation action is based on a determination of "nationwide scope or effect" within the meaning of CAA section 307(b)(1).[2] In deciding to invoke this exception, the Administrator has taken into account a number of policy considerations, including his judgment regarding the benefit of obtaining the D.C. Circuit's authoritative centralized review, rather than allowing development of the issue in other contexts, in order to ensure consistency in the Agency's approach to

---

[2] In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the "nationwide scope or effect" exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

allocation of allowances in accordance with EPA's national regulations in 40 CFR part 84. The final action treats all affected entities consistently in how the 40 CFR part 84 regulations are applied. The allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations, and each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affect the allocations to others. The Administrator finds that this is a matter on which national uniformity is desirable to take advantage of the D.C. Circuit's administrative law expertise and facilitate the orderly development of the basic law under the AIM Act and EPA's implementing regulations. The Administrator also finds that consolidated review of the action in the D.C. Circuit will avoid piecemeal litigation in the regional circuits, further judicial economy, and eliminate the risk of inconsistent results for different regulated entities. The Administrator also finds that a nationally consistent approach to the allocation of allowances constitutes the best use of agency resources. The Administrator is publishing his finding that the allocation action is based on a determination of nationwide scope or effect in the **Federal Register** as part of this notice in addition to inclusion on the website announcing allocations.

For these reasons, the final action of the Agency allocating hydrofluorocarbon allowances to entities located throughout the country is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and finds that the final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is hereby publishing that finding in the **Federal Register**.

Under section 307(b)(1) of the CAA, petitions for judicial review of this allocation action must be filed in the United States Court of Appeals for the District of Columbia Circuit by December 18, 2023. Under section 307(b)(1) of the CAA, petitions for judicial review of the administrative consequence actions noticed herein must be filed in the United States Court of Appeals for the appropriate circuit by December 18, 2023. Filing a petition for reconsideration by the Administrator of this final action does not affect the finality of this action for purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. See CAA section 307(b)(2).

**Paul Gunning,**
*Director, Office of Atmospheric Protection.*
[FR Doc. 2023–22163 Filed 10–18–23; 8:45 am]
**BILLING CODE 6560–50–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**[EPA–HQ–OGC–2023–0500; FRL–11447–01–OGC]**

**Proposed Consent Decree, Clean Air Act Citizen Suit**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of proposed consent decree; request for public comment.

---

**SUMMARY:** In accordance with the Clean Air Act, as amended (CAA or the Act), notice is given of a proposed consent decree in *Center for Biological Diversity* v. *United States Environmental Protection Agency, et al.*, No. 2:23–cv–01843 (E.D. Pa.). On May 16, 2023, Plaintiff Center for Biological Diversity filed a complaint in the Unites States District Court for the Eastern District of Pennsylvania. Plaintiff alleged that the Environmental Protection Agency (EPA or the Agency) has unreasonably delayed taking action following the United States Court of Appeals for the Third Circuit's September 3, 2021, order in Case No. 21–1279. That order granted EPA's request to remand to EPA for reconsideration a final rule titled "Air Plan Approval; Pennsylvania; Reasonably Available Control Technology (RACT) for Volatile Organic Compounds (VOC) Under the 2008 Ozone National Ambient Air Quality Standards (NAAQS)," published in the **Federal Register** on December 14, 2020). The proposed consent decree would establish a deadline for EPA to complete its reconsideration of that final rule.

**DATES:** Written comments on the proposed consent decree must be received by November 20, 2023.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–HQ–OGC–2023–0500, online at *https://www.regulations.gov* (EPA's preferred method). Follow the online instructions for submitting comments.

*Instructions:* All submissions received must include the Docket ID number for this action. Comments received may be posted without change to *https://www.regulations.gov,* including any personal information provided. For detailed instructions on sending comments and additional information on the rulemaking process, see the "Additional Information about Commenting on the Proposed Consent Decree" heading under the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Derek Mills, Air and Radiation Law Office, Office of General Counsel, U.S. Environmental Protection Agency; telephone (202) 564–3341; email address *mills.derek@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

**I. Obtaining a Copy of the Proposed Consent Decree**

The official public docket for this action (identified by Docket ID No. EPA–HQ–OGC–2023–0500) contains a copy of the proposed consent decree. The official public docket is available for public viewing at the Office of Environmental Information (OEI) Docket in the EPA Docket Center, EPA West, Room 3334, 1301 Constitution Ave. NW, Washington, DC. The EPA Docket Center Public Reading Room is open from 8:30 a.m. to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the OEI Docket is (202) 566–1752.

The electronic version of the public docket for this action contains a copy of the proposed consent decree and is available through *https://www.regulations.gov.* You may use *https://www.regulations.gov* to submit or view public comments, access the index listing of the contents of the official public docket, and access those documents in the public docket that are available electronically. Once in the system, key in the appropriate docket identification number then select "search."

**II. Additional Information About the Proposed Consent Decree**

On December 14, 2020, EPA issued a final rule approving two revisions to Pennsylvania's state implementation plan (SIP) to address certain reasonably available control technology requirements, specifically those related to control techniques guidelines for volatile organic compounds and the addition of regulations controlling volatile organic compounds emissions from industrial cleaning solvents. That final rule was titled "Air Plan Approval; Pennsylvania; Reasonably Available Control Technology (RACT) for Volatile Organic Compounds (VOC) Under the

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FED. R. APP. P. 26.1 and Circuit Rule 26.1, petitioner Peter

Williams is a natural person, for whom no corporate disclosure is required.

Dated: December 23, 2024   Respectfully submitted,


/s/ Lawrence J. Joseph
_____
Lawrence J. Joseph

Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 23, 2024, I have caused one true and correct copy of the foregoing Petition for Review—together with the exhibits and corporate disclosure—to be served on the following by postage pre-paid U.S. Priority Mail:

Hon. Michael S. Regan
Administrator
Environmental Protection Agency
Ariel Rios Building (Mail Code 1101A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Dimple Chaudhary, Esq.
Acting General Counsel
Environmental Protection Agency
Ariel Rios Building (Mail Code: 2310A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

/s/ Lawrence J. Joseph
Lawrence J. Joseph